**YURMAN DESIGN INC., and Yurman Studios Inc., Plaintiffs,**

v.

**DIAMONDS AND TIME, Haltom's Jeweler's, Inc. d/b/a/ Tripp Trading and Doe I, Defendants.**

**No. 00 Civ. 0672(BSJ).**

United States District Court, S.D. New York.

April 18, 2001.

**Order and Opinion**

JONES, District Judge.

Plaintiffs, Yurman Design Inc. and Yurman Studios, Inc. (collectively, "Yurman"),

who engage in the design, manufacture, distribution and sale of fine jewelry, move for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to enjoin Defendant, Diamonds and Time ("D & T"), a jewelry store, from using the trademark DAVID YURMAN in connection with advertising, promoting and selling jewelry products. For the reasons set forth below, Yurman's motion is granted.

## BACKGROUND

Beginning in or about 1982, David Yurman, a jewelry designer, began designing, manufacturing, promoting, marketing and selling a jewelry line which incorporates a cable design together with other artistic elements. Marketing under the DAVID YURMAN brand name, Yurman has become widely known and regarded as a leading American jewelry design company. Declaration of Scott Vogel ("Vogel Decl.") ¶¶ 2–3.

Since approximately 1982, Yurman has spent a large amount of time and resources in an effort to produce jewelry of the finest design, materials and craftsmanship. It has also spent tens of millions of dollars advertising and promoting its jewelry products.[1] In addition, Yurman's jewelry products have become so highly acclaimed and widely known that they consistently attract unsolicited local and national media coverage. Vogel Decl. ¶¶ 3–4.

To protect its brand name DAVID YURMAN and its business reputation, integrity, and good will, Yurman sought and received a federal trademark registration for its brand name DAVID YURMAN. In addition, it employs investigators to ensure that third parties are not violating Yurman's trademark rights and issues cease and desist letters and, if necessary, commences litigation when it discovers unauthorized use of its DAVID YURMAN trademark. Vogel Decl. ¶ 6; 8.

Yurman also has established an authorized retailer program which imposes certain conditions on authorized retailers. Through that program, Yurman ensures that only retailers with Yurman's express authorization sell DAVID YURMAN jewelry.[2] Those retailers are obligated to sell DAVID YURMAN jewelry only to consumers and not to other retailers. In addition, the program allows Yurman to control the sale environment, promotion, advertising, and good will of DAVID YURMAN jewelry. Vogel Decl. ¶¶ 10–12.

Yurman also requires that it approve in advance all forms of advertising, including those appearing in magazines and newspapers, or on billboards and television. All advertisements that are forwarded to Yurman for approval are carefully reviewed to ensure the integrity of the DAVID YURMAN trademark. Yurman also sends sales representatives to visit authorized retailers and inspect display cases, display cards lighting and other fixtures. Vogel Decl. ¶ 13.

Yurman alleges that D & T, which is not now and never has been a member of the authorized retailer program, has obtained DAVID YURMAN jewelry from a number

---

[1]. In fiscal year 1999, Yurman spent approximately $9.6 million in advertising and promoting its line of DAVID YURMAN jewelry. Vogel Decl. ¶ 4.

[2]. Participants in the authorized retailer program include stores such as Saks Fifth Ave-

nue, Neiman Marcus, Bloomingdales, Marshall Fields and Nordstrom. Yurman has also given exclusive rights to approximately 200 upscale jewelry stores in the United States. Vogel Decl. ¶ 10.

of sources and has been selling them without authorization. Vogel Decl. ¶ 14. According to Yurman, in connection with these sales, D & T has engaged in an advertising campaign in the Houston Press since July 2000 which makes unauthorized use of the DAVID YURMAN trademark. Declaration of Mary. P. Noyes ("Noyes Decl.") ¶¶ 2–3; Transcript of Oral Argument ("Arg.") at 6; 17; 41. As a result of this advertising campaign, Yurman filed the instant motion by order to show cause on November 8, 2000. Oral argument was held on November 15, 2000.[3]

## DISCUSSION

Yurman moves for a preliminary injunction to enjoin Defendant, D & T from using the trademark DAVID YURMAN in connection with advertising, promoting and selling jewelry products. It claims that D & T's use of the DAVID YURMAN trademark violates Lanham Act §§ 32(1)[4] and 43(a)[5] because such use infringes upon Yurman's valid trademark.

Specifically, Yurman contends that D & T is attempting to trade on the good will that Yurman has developed in its DAVID YURMAN trademark by using the whole DAVID YURMAN trademark in its ads, by using the same font type as Yurman uses and by using a larger font size for the DAVID YURMAN name in its ads than it does for its own name. Yurman argues that D & T's advertisements have confused, or are likely to confuse, consumers into believing that D & T is an authorized retailer of DAVID YURMAN jewelry. Yurman also claims such confusion has irreparably harmed Yurman in the marketplace and, to the extent that D & T continues to run its advertisements, will continue to irreparably harm Yurman. Plaintiffs' Memorandum of Law in Support of Their Motion by Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction Enjoining Defendant D & T's Use of the DAVID YURMAN Trademark ("Pls.Mem.") at 1; Arg. at 29–32; 44–45.

D & T contends that a preliminary injunction should not issue because it is advertising the sale of legitimate DAVID YURMAN jewelry in an entirely legal

3. Prior to this motion, D & T's counsel made a motion to withdraw as counsel. Yurman opposed D & T's counsel's and simultaneously filed the instant motion for a preliminary injunction. This Court denied D & T's counsel's motion until after the preliminary injunction hearing, at which time it relieved counsel. While D & T has been unable to retain new counsel, this Court finds that the instant motion was fully submitted and argued, and accordingly, decides it on the merits.

4. Section 32(1) of the Lanham Act provides in pertinent part:

[a]ny person who shall, without the consent of the registrant (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

5. Section 43(a) of the Lanham Act provides in pertinent part:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

manner. It asserts that it has never represented itself as an authorized Yurman retailer. In addition, it states that while its advertisements include the DAVID YURMAN name, they have an effective disclaimer which states that it is "not affiliated with Yurman Designs Inc." Arg. at 34; 36–37.

D & T also argues that there is no irreparable harm here because there was a several month delay between when the advertising began and this motion and there has been no change in circumstances. Furthermore, it maintains that Yurman can not show a likelihood of success on the merits because there is no evidence that there has been or that there is likely to be any consumer confusion. Moreover, D & T states that its marketing channels are different from those which Yurman uses. Arg. at 33–34; 37–39; 45.

In rebuttal, Yurman asserts that D & T's disclaimer is ineffective because it only mentions Yurman Design, Inc. and not the DAVID YURMAN trademark, it is in a much smaller font size, and because people generally do not pay attention to them. In addition, Yurman argues that this Court should not consider the delay between the beginning of the ad campaign and its motion against it both because the delay was brief and the parties were in settlement discussions. Moreover, it states that it is not required to establish actual confusion for this Court to grant a preliminary injunction. Finally, Yurman suggests that the Houston Press is the market that it uses to advertise DAVID YURMAN jewelry. Arg. at 40–45.

 It is well established that preliminary injunctive relief "is an extraordinary and drastic remedy which should not be routinely granted." *Medical Society of New York v. Toia*, 560 F.2d 535, 538 (2d Cir.1977). In order for a preliminary injunction to issue, the movant must demonstrate: (1) irreparable harm and (2) either

a likelihood of success on the merits or sufficiently serious questions on the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor. *Genesee Brewing Company, Inc. v. Stroh Brewing Company*, 124 F.3d 137, 142 (2d Cir.1997). Under Lanham Act §§ 32(1) and 43(a), the movant can demonstrate both irreparable harm and the likelihood of success on the merits by showing a likelihood of consumer confusion. *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1038 (1992).

 To prevail on a trademark infringement claim under either of these Lanham Act provisions, Yurman, must, of course also prove that "it has a valid mark entitled to protection and that [D & T's] use of it is likely to cause confusion." *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993). It is without question that the DAVID YURMAN mark, as a registered trademark, is presumed distinctive and entitled to protection. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986). Accordingly, this motion turns on whether D & T's use of the DAVID YURMAN mark is likely to cause consumer confusion.

 When assessing the likelihood of confusion, this Court must take into account the overall context in which the marks appear and the totality of circumstances that could cause consumer confusion. *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos*, 228 F.3d 56, 66 (2d Cir.2000).

Having reviewed the advertising in question, this Court finds that D & T's advertisements do violate sections 32(1) and 43(a) of the Lanham Act because they are likely to confuse consumers into believing that D & T is an authorized retailer of DAVID YURMAN jewelry or at least affiliated with Yurman. This Court finds that

the prominent position of the DAVID YURMAN mark, the use of the same font type, and the large font size of the DAVID YURMAN mark in the D & T ads, especially when compared to the much smaller font size used for D & T itself— all will likely lead to consumer confusion. In addition, this Court finds that D & T's disclaimer is ineffective to reduce consumer confusion. First, the disclaimer is minuscule in font size in comparison to the DAVID YURMAN mark. In addition, as Yurman correctly notes, the disclaimer is ambiguous because it does not state that D & T is not affiliated with DAVID YURMAN.

To the extent that the *Polaroid* factors are relevant to this inquiry, this Court notes that Yurman's mark is a strong one, the mark being used is Plaintiff's very own mark and it is clear D & T intentionally uses the mark for its own gain. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

█ Accordingly, since this Court finds both a likelihood of success on the merits and irreparable harm, Yurman's motion for a preliminary injunction is GRANTED. Pursuant to Fed.R.Civ.P. 65, it is ORDERED that, pending a final decision on the merits of Yurman's claims, D & T, its officers, agents, servants, employees, successors and assigns, are enjoined from using the DAVID YURMAN trademark in advertising its products in any media except as follows: (1) the name "Diamonds and Times" shall appear in any advertisement in which D & T uses the name DAVID YURMAN; (2) the name DAVID YURMAN shall always appear in a font size that is at least one half the size of the font size used for the name "Diamonds and Time"; (3) the name DAVID YURMAN shall not appear in a font type that is similar to the font type used by Yurman in connection with its DAVID YURMAN

trademarks; (4) the name DAVID YURMAN shall always appear in close proximity with the name of at least one other designer of jewelry products; (5) the disclaimer shall read "not affiliated with DAVID YURMAN or Yurman Design, Inc." and (6) the disclaimer must be in a font size which is at least one half the size of that of the name DAVID YURMAN.

It is further ORDERED that, pursuant to Fed.R.Civ.P. 65(c), Yurman post a bond of $10,000 as security while this lawsuit is pending.

**SO ORDERED.**