Louis Vuitton MALLETIER,
Plaintiff–Appellant,

v.

BURLINGTON COAT FACTORY
WAREHOUSE CORP.,
Defendant–Appellee,

Four Seasons Handbags Company, and
John Does 1–10, Defendants.

Docket No. 04–2907–CV.

United States Court of Appeals,
Second Circuit.

Argued: March 2, 2005.

Decided: Oct. 12, 2005.

**534**

Theodore C. Max, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (Charles A. LeGrand, of counsel), New York, NY, for Plaintiff–Appellant.

Robert S. Weisbein, Darby & Darby (Edward V. DiLello and Atul R. Singh, of counsel), New York, NY, for Defendant–Appellee.

Before: CALABRESI, POOLER, and B.D. PARKER, Circuit Judges.

CALABRESI, Circuit Judge.

■■■ When faced with the claim that two products are confusingly similar, a person's natural reaction is to place the two products side-by-side, and then, looking back and forth at them, to ascertain how comparable the two goods are. This process of simultaneous observation is, without doubt, an efficient way of identifying similarities and differences between products. One can understand, then, why district courts would engage in such a process as part of their resolution of trademark infringement suits under the Lanham Act, 15 U.S.C. § 1051 *et seq.* However, while simultaneous comparison may be a useful heuristic means of identifying the similarities and differences between two products, the ultimate conclusion as to whether a substantial number of consumers are likely to be confused by the similarities must be reached with a focus on actual market conditions and the type of confusion alleged. Where products in the relevant market are not typically displayed in the same locations, centering on whether they are likely to be distinguished when viewed simultaneously is incorrect, and will result in a faulty likelihood-of-confusion analysis.

In this case, it appears that the district court (Berman, *J.*) denied a preliminary injunction, at least in part on the basis of an inappropriate focus on the likelihood that consumers would be confused when viewing the products side by side. We therefore vacate the judgment and remand for further proceedings.

## I. BACKGROUND

Plaintiff–Appellant Louis Vuitton Malletier ("LVM") is a famous French fashion design firm engaged in the business of designing, manufacturing, importing, advertising, selling and distributing designer luggage, handbags, travel leather accessories, high fashion apparel and accessories. LVM owns the federally registered Louis Vuitton Toile Monogram Designs ("Toile marks"), its flagship handbag design, which was first introduced in France in the spring of 1896. LVM also owns the unregistered Louis Vuitton Monogram Multicolore Designs ("Multicolore mark"), developed in 2002 by New York fashion designer Marc Jacobs and Tokyo-based artist Takashi Murakami and introduced in the spring of 2003. The Multicolore marks are updated versions of the traditional Toile marks, slightly rearranged and printed in a variety of colors on white or black leather surfaces. Since their introduction two years ago, they have been very successful, and (despite a selling price of between $400 and $4,000 per Multicolore bag) production has not kept up with demand.

LVM's Toile marks consist of eight trademarks registered with the U.S. Patent and Trademark Office ("PTO"). Three of those marks are "incontestable" under 15 U.S.C. § 1065, which provides that a registered mark in continuous use for a

five-year period is presumptively valid.[1] The Toile Designs feature "entwined LV initials with three motifs, a curved diamond with a four-point star inset, its negative, and a circle with a four-leafed flower inset." It is these three motifs, which have been used for nearly a century on LVM's handbags, clothing, and jewelry, that are "incontestable" under the Lanham Act.

In October 2002, Louis Vuitton introduced four new collections of "multicolored patterns and styles of handbag and accessory designs based upon [the Toile marks]," one of which featured the Multicolore mark. The Multicolore mark consists of the Louis Vuitton Toile Monogram pattern in 33 colors on either a white or black background and includes the four-leafed flower inset and the positive and negative of the curved diamond with a four-point star inset. As previously mentioned, the Multicolore mark, which includes visual elements of LVM's registered Toile trademarks (including the "four-leafed flower inset"), has become "extremely popular," but is currently unregistered.

In the United States, both the Toile and the Multicolore LVM handbags are sold in more than 90 Louis Vuitton stores, as well as through LVM's affiliated website, www.eluxury.com. LVM bags are also available at "exclusive department and specialty retail stores" such as Neiman Marcus, Macy's, Bloomingdale's, and Saks Fifth Avenue. To date, LVM has sold over 47,000 of its Multicolore bags in the United States, with sales totaling over $25 million.

Defendant–Appellant Burlington Coat Factory ("BCF") is a discount clothing and accessory retail chain with 341 retail stores in 42 states. BCF also conducts extensive commerce through its website, www.bcfdirect.com. Burlington has become famous for selling name-brand fashions and accessories at discount prices. At the time relevant to this lawsuit, BCF's website claimed to sell "the very best designer and famous label fashions, 20%—60% off department store prices." *See www.bcfdirect.com* (via *www.archive.org* capture, October 2003). But despite the presence of other famous fashion brands, LVM has never sold its Toile or Multicolore bags in BCF's stores or on BCF's website.

On October 10, 2003, Burlington began offering for sale a line of beaded handbags ("BCF bags") with colorful designs reminiscent of the LVM Multicolore bags. Specifically, the BCF bags are "[1] beaded on their entire exterior surface; [2] decorated with the letters 'NY' standing for 'New York;' and [3] also decorated with an assortment of shapes, including circles, diamonds and flowers," on a white or black background. These bags, manufactured by Four Seasons under the "Pengyuan" name, were sold by BCF using the sales code and style number "LVTN" (apparently shorthand for "Louis Vuitton") at a price of $29.98 per bag. *Id.* BCF sold approximately 1,700 such bags before this litigation began.

BCF's buyer, Clare Larson, testified that, when she purchased the bags at issue, she was immediately aware that they would remind consumers of LVM's popular Multicolore bags. In Larson's words:

> From the first time [I] saw samples of the [BCF bags], I was aware that their design pattern would call to mind products offered by Vuitton, among other manufacturers, which are also decorated with criss-cross patterns featuring a letter or monogram, and which are cur-

---

**1.** "Incontestability" does not, however, mean that a mark is unassailable. For example, the owner of an "incontestable" registered mark may still lose rights in the mark if it is shown, for instance, that the mark was fraudulently registered, or that it was abandoned through three or more continuous years of non-use. *See* 15 U.S.C. § 1115.

rently popular in the marketplace. I considered that the look of the [BCF bags] might make BCF customers think of other popular handbag styles, including Vuitton bags. However, this was certainly not the only reason BCF chose to buy the [BCF bags].

BCF, in its brief to this Court, states that the bags were purchased, in part, because of their resemblance to LVM's bags, and that, in addition to Larson, "others at BCF were aware that the pattern of the [BCF bags] might call to mind handbags offered by other manufacturers, including (but not only) [LVM]." But it also asserts that other factors were important in the purchasing decision, including price and the bag's unique beaded fabric.

Upon learning of the BCF "Pengyuan" bags in January 2004, LVM started an investigation into their origin. On February 20, 2004, LVM issued to BCF a cease-and-desist letter specifically addressing the BCF bags. BCF and LVM then began negotiations that ran through March 2004. The negotiations broke down on April 6, 2004, when BCF sent LVM a letter, confirming its refusal to stop selling the BCF bag.

The next day, LVM brought suit against BCF, the Four Seasons Handbag Company ("Four Seasons") and John Does 1–10. In its complaint, LVM claimed trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1116, unfair competition and false designation of origin under 15 U.S.C § 1125(a), trade dress infringement under 15 U.S.C. § 1125(c), and trademark dilution under 15 U.S.C. § 1125(c). It also asserted related claims of unfair competition and trademark dilution under state law, including N.Y. General Business Law § 360–1 and the general common law of New York. LVM sought, *inter alia*, disgorgement of profits, treble and punitive damages, costs, and attorney's fees, along with injunctive relief barring BCF's continued sale of the allegedly infringing handbags.

On May 6, 2004, the district court (Berman, *J.*) held oral argument on LVM's motion for a preliminary injunction. At that hearing, BCF presented a consumer survey conducted by Walter McCullough, president of Monroe Mendelsohn Research, Inc. The McCullogh study purported to demonstrate that the BCF handbags were not likely to create point-of-sale confusion with LVM's handbags. McCullough's report concluded that "[t]otal likely confusion [equaled] [l]ess than 10%" among women 18 and older.

In rebuttal, LVM presented the testimony of Dr. Robert C. Sorensen, who took issue with the methodology and conclusions of the McCullough report. Sorensen contended that the sampling methodology for the McCullough report, as well as the order in which products were displayed and questions were asked, systematically lowered the incidence of point-of-sale confusion. If these errors were corrected, Sorensen asserted, consumer confusion would equal at least 18%, and perhaps much more if only self-identified "fashion-conscious" consumers were sampled. LVM did not, however, submit its own survey evidence on the issue of confusion.

On May 24, 2004, the court denied LVM's request for a preliminary injunction. The court determined that, because point-of-sale confusion was unlikely, LVM had not established a sufficient probability of success on the merits of its trademark infringement claims. For related reasons, it rejected the state and federal dilution claims and the state unfair competition claims as a basis for a preliminary injunction. Upon making that finding, the court also—at BCF's request—dissolved the standing temporary restraining order ("TRO").

Vuitton filed a timely notice of appeal. It also moved for a stay of judgment pend-

ing that appeal. On August 3, 2004, we granted that motion and stayed the dissolution of the TRO. We now vacate the district court's judgment and remand the case for further proceedings.

## II. DISCUSSION

■ We review for abuse of discretion a district court's decision to deny a motion for a preliminary injunction. *See, e.g., Brennan's, Inc. v. Brennan's Restaurant, L.L.C.,* 360 F.3d 125, 129 (2d Cir.2004). To constitute an abuse of discretion, the district court's decision must have rested on an error of law or a clearly erroneous finding of fact. *See Green Party of New York State v. New York State Bd. of Elections,* 389 F.3d 411, 418 (2d Cir.2004). To identify the presence or absence of confusion under the Lanham Act, we first look to the factors our court set out in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.1961).[2] "A district court's findings with regard to each individual factor are subject to the clearly erroneous standard of review, but the ultimate issue of the likelihood of confusion is reviewed *de novo.*" *Streetwise Maps, Inc. v. VanDam, Inc.,* 159 F.3d 739, 743 (2d Cir.1998).

■ To obtain a preliminary injunction, a plaintiff must establish: "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly" in its favor. *Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 173 (2d Cir.2000). In trademark disputes, "a showing of likelihood of confu-

sion establishes both a likelihood of success on the merits and irreparable harm." *Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 73 (2d Cir.1988) (citation omitted).

■ Of salient importance among the *Polaroid* factors is the "similarity of the marks" test, which attempts to discern "whether the similarity of the marks is likely to cause confusion among potential customers." *Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 394 (2d Cir. 1995). To apply this factor, courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and "the totality of factors that could cause confusion among prospective purchasers." *Gruner + Jahr USA Pub. v. Meredith Corp.,* 991 F.2d 1072, 1078 (2d Cir.1993).

The district court found that the BCF and LVM bags "project a wholly different impression" so that customers are likely to view them as dissimilar and therefore unlikely to be confused by their similarities. However, the district court's analysis of the similarity factor appeared to display an inappropriate focus on the likelihood that customers would be confused when viewing the bags simultaneously, whereas serial viewing is the appropriate focus given the market conditions and LVM's claims of initial-interest and post-sale confusion. Thus, the district court stated that:

> The Court concludes upon this application that the [BCF bags] are not similar to the Louis Vuitton Handbags—indeed, they appear very different. *Significant differences between the handbags are easily discernible whether one views the handbags side-by-side or from a distance.* The [BCF bags] are made from very different materials, *i.e.,* shiny beads

2. The Lanham Act protects against several types of consumer confusion, including *point-of-sale* confusion, *see Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872 (2d Cir.1986), *initial interest* confusion, *see*

*Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 260 (2d Cir.1987), and *post-sale* confusion, *see Lois Sportswear,* 799 F.2d at 872, and the *Polaroid* factors must be applied with an eye toward each of these. *See id.*

and cheaper cloth, and they project a wholly different impression from that of the Louis Vuitton Handbag. *See* Barbault Aff. at ¶ 43 (noting difference between "cheap" [BCF bag] materials and "finest materials" of Louis Vuitton Handbags); Larson Aff. at ¶ 17 ([BCF bag] design is "irregular" and "quirky and cartoon-like" while Louis Vuitton Handbags are "crisp and absolutely symmetrical, giving a clean-edged ordered look"). It is unlikely that the [BCF bag] would be confused with a Louis Vuitton. *See, e.g., Meese, Inc. v. International Leisure Prods., Inc.,* No. 03 Civ. 8684, 2003 WL 22902594 at *4 (S.D.N.Y. Dec. 9, 2003) (no similarity of marks where "the two products, when visually inspected, appear very different").

(emphasis added).

 While a district court's simultaneous comparison of two products is not an inappropriate heuristic means of investigating similarities and differences in their respective designs on the way to an ultimate conclusion as to whether the products are likely to leave similar impressions on consumers, district courts must be careful to maintain a focus on the ultimate issue of the likelihood of consumer confusion.[3] As a result, the Lanham Act requires a court to analyze the similarity of the products in light of the way in which the marks are actually displayed in their purchasing context. *See, e.g., Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 1004 (2d Cir.1997) ("the test of confusion [under the Lanham Act] is not whether the products can be differentiated when [they] are subject to a side-by-side comparison. Instead, we must ask whether they create the same general overall impression such that a consumer who has seen [plaintiff's] trade dress would, upon *later* seeing [defendant's] trade dress *alone,* be confused.") (emphasis added); *American Home Prods. Corp. v. Johnson Chem. Co.,* 589 F.2d 103, 107 (2d Cir.1978) ("The test [for likelihood of confusion] is not whether the consumer will know the difference if he sees the competing products on the same shelf."); *Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.,* 281 F.2d 755, 762 (2d Cir.1960) ("While a side by side comparison of the trademarks ... would enable an attentive observer to differentiate them, this is not the test to be applied. It is the general overall impression which counts."). Whether simultaneous viewing by consumers is likely to result in confusion is not relevant when it is serial viewing that is at issue given the market context or the type of confusion claimed. In such a case, a district court must ask not whether differences are easily discernable on simultaneous viewing, but whether they are likely to be memorable enough to dispel confusion on serial viewing.

---

**3.** We emphasize that our "similarity of the marks" test—especially when the comparison is between marks on identical product types (here, handbags)—does not require an *identity* of marks. For example, in *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway and Sons,* 523 F.2d 1331 (2d Cir.1975), both Grotrian–Steinweg and Steinway sold the same class of products—pianos. We noted that the impression created by the "Grotrian–Steinweg" and "Steinway" marks were sufficiently similar to counsel in favor of finding a trademark infringement, because, although the marks were hardly identical, "a potential American purchaser of the kind of piano which the parties sell, upon hearing the name 'Grotrian–Steinweg,' would associate Grotrian's product with Steinway's." *Id.* at 1340. Thus, a significant similarity in appearance, or in sound, is all that is needed. Even if a consumer can differentiate between two products, the question is whether, and to what degree, the look of the junior user's product calls to mind the senior user's product. It follows that, in the context of the case before us, the handbags need not be identical, but only similar, for there to be a likelihood of confusion.

■ The need for a contextual analysis, rather than a simple focus on whether simultaneous viewing is likely to cause confusion, is grounded in the purpose of the Lanham Act. That Act seeks to eliminate the confusion that is created in the marketplace by the sale of products bearing highly similar marks. *See, e.g., Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 198, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) (noting that the Lanham Act's aim is not only to encourage investments in strong trademarks, but also "to protect the ability of consumers to distinguish among competing producers") (*citing* S.Rep. No. 1333, 79th Cong., 2d Sess., 3–5 (1946)); *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.,* 830 F.2d 1217, 1220 (2d Cir.1987) (stating that the Lanham Act's purpose is "to prevent consumer confusion regarding a product's source ... and to enable those that fashion a product to differentiate it from others on the market") (internal citation omitted).

■ Accordingly, a court that seeks to discern confusion without regard to the marketplace frustrates (however unintentionally) Congress's intent. Though two products may be readily differentiated when carefully viewed simultaneously, those same products may still be confusingly similar in the eyes of ordinary consumers encountering the products individually under typical purchasing conditions, and that "real world" confusion is the confusion that the Act seeks to eliminate.[4] As a result, courts must evaluate the likely effect on consumers of the marks' similar and dissimilar features *with a focus on market conditions,* even if the products appear to be adequately different in a non-marketplace setting.

■ In the case before us, the district court's finding that no likelihood of confusion existed appears to have been the result, at least in part, of an inappropriate focus on the effect on consumers of simultaneous viewing of the handbags. The parties concede that, in the actual marketplace, these products are not sold side-by-side, and are instead sold in different stores and on different websites. Under the circumstances, a focus on the likely effect of simultaneous viewing on consumers was legally erroneous. We therefore vacate the district court's denial of a preliminary injunction that LVM sought on the basis of its Lanham Act claims. On remand, the court should give particular weight to any evidence submitted by the parties addressing the overall impression that consumers are likely to have of the handbags when they are viewed sequentially, and in different settings, rather than simultaneously.[5]

---

4. As noted above, however, point-of-sale confusion is not the *only* confusion which the Lanham Act seeks to prevent; other forms of confusion, including reverse confusion, initial interest confusion, and post-sale confusion may also be actionable. *See, e.g., Banff, Ltd. v. Federated Dep't Stores, Inc.,* 841 F.2d 486, 490–91 (2d Cir.1988) (reverse confusion); *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 260 (2d Cir.1987) (initial interest confusion); *Lois Sportswear,* 799 F.2d at 872 (post-sale confusion).

5. LVM asserts that it is entitled to a preliminary injunction on the basis of its non-Lanham Act claims, including unfair competition and trademark dilution under New York law. We have previously noted that New York's unfair competition statute requires a likelihood of confusion analysis that is similar to that required by the Lanham Act. *See W.W.W. Pharm. Co., Inc. v. Gillette Co.,* 984 F.2d 567, 576 (2d Cir.1993). We therefore remand this claim to the district court as well.

For similar reasons, we remand LVM's claim for dilution under New York law. Under New York General Business Law § 360–1 (McKinney Cum.Supp.2004), a plaintiff may receive an injunction against dilutive harms, including trademark "blurring," upon demonstrating a likelihood of dilution. *See, e.g., Hormel Foods Corp. v. Jim Henson Prod., Inc.,*

## III. CONCLUSION

The district court's denial of LVM's request for a preliminary injunction is VACATED, and the case REMANDED for further proceedings not inconsistent with this opinion.

73 F.3d 497, 506 (2d Cir.1996). We have held that this "likelihood of dilution" must be determined using a multi-factored test, part of which requires a court to discern the "similarity of the marks" in the same manner as one would under the Lanham Act. *See Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 966 (2d Cir.1996). In view of our disposition of the Lanham Act claims, we also remand, for further consideration, LVM's claim of dilution under New York law.