The HEISMAN TROPHY TRUST, Plaintiff,

v.

SMACK APPAREL CO., Defendant.

No. 08 Civ. 9153(VM).

United States District Court, S.D. New York.

July 17, 2009.

Howard S. Zelbo, Lawrence B. Friedman, Cleary Gottlieb Steen & Hamilton, LLP, New York, NY, for Plaintiff.

James William Tilly, The Tilly Law Firm, Tulsa, OK, Kelly Douglas Talcott, K & L Gates, LLP, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff The Heisman Trophy Trust ("The Heisman Trust") brought this action alleging that defendant Smack Apparel Company ("Smack Apparel") breached a settlement agreement with The Heisman Trust, and continues to infringe and dilute The Heisman Trust's trademarks. By Order dated January 9, 2009, the Court issued a preliminary injunction prohibiting Smack Apparel from using The Heisman Trust's trademarks or service marks, or any confusingly similar marks, on or in connection with Smack Apparel's goods or services. The Court subsequently set out its reasoning in a Decision and Amended Order dated January 23, 2009 (the "Decision and Amended Order").[1]

The Heisman Trust has now moved for partial summary judgment on its claim for breach of the settlement agreement, seeking a permanent injunction against Smack Apparel and an award of attorneys' fees. For the reasons set forth below, the Court GRANTS The Heisman Trust's motion for partial summary judgment. The Court will not issue a decision on The Heisman Trust's application for an award of attorneys' fees until The Heisman Trust has submitted further documentation in support of that application.

## I. BACKGROUND [2]

The Heisman Trust is a registered not-for-profit trust charged with supporting

---

1. The Decision and Amended Order is available at *The Heisman Trophy Trust v. Smack Apparel Co.*, 595 F.Supp.2d 320 (S.D.N.Y. 2009).

2. The following factual summary derives from the parties' submissions to the Court and any exhibits attached thereto, specifically: The Heisman Trust's Amended Verified Complaint, dated November 7, 2008 (the "Amended Complaint") and the documents attached to it or incorporated by reference, *see Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156–57 (2d Cir.2006); Memorandum of Law in Support of the Heisman Trophy Trust's Motion for Partial Summary Judgment, dated March 17, 2009 ("Heisman Br."); Memorandum of Law in Opposition to Motion of Plaintiff The Heisman Trophy Trust for Partial Summary Judgment, dated March 31, 2009 ("Smack Br."); Reply Memorandum of Law in Support of the Heisman Trophy Trust's Motion for Partial Summary Judgment, dated April 7, 2009 ("Heisman Reply Br."); Statement of Material Facts as to Which There Is No Genuine Issue Pursuant to Local Civil Rule 56.1, dated March 17, 2009 ("Heisman Rule 56.1 Statement"); and Defendant Smack Apparel Company's Response to Statement of Material Facts as to Which There Is No Genuine Issue and Additional Material Facts as to Which There Is No Genu-

public charities, especially those that support and encourage student athletics; providing scholarships; and promoting youth physical fitness in high school and college. The Heisman Trust owns the rights for all intellectual property relating to the Heisman Trophy. These rights were transferred to it by The Downtown Athletic Club of New York City, Inc. (the "Downtown Athletic Club"), the organization that was originally responsible for awarding the Heisman Trophy.

The Heisman Trophy is awarded each year in recognition of an outstanding college football player. The presentation of the award is generally preceded by coverage from national television networks, newspapers, magazines, and radio talk shows, and the award itself is presented on ESPN television network, with millions of viewers watching. The Heisman Trust owns the following federal trademark and service mark registrations relating to the Heisman Trophy (the "Heisman Marks"):

1) HEISMAN MEMORIAL TROPHY, U.S. Trademark Reg. No. 936,853, dated June 27, 1972, for "promoting interest, excellence and sportsmanship in intercollegiate football through the medium of an annual award" (Amended Complaint, Ex. A at 1);

2) HEISMAN MEMORIAL TROPHY AND DESIGN, U.S. Trademark Reg. No. 936,852, dated June 27, 1972, for "promoting interest, excellence and sportsmanship in intercollegiate football through the medium of an annual award" (*id.* at 2);

3) HEISMAN TROPHY AWARD, U.S. Trademark Reg. No. 1,397,161, dated June 10, 1986, for "promoting interest, excellence and sportsmanship in intercollegiate football through the medium of an annual award" (*id.* at 3);

4) HEISMAN TROPHY, U.S. Trademark Reg. No. 3,139,387, dated September 5, 2006, for "promoting interest, excellence and sportsmanship in intercollegiate football through the medium of an annual award" (*id.* at 4);

5) HEISMAN TROPHY, U.S. Trademark Reg. No. 3,477,047, dated July 29, 2008, for "clothing, namely T-shirts and hats" (*id.* at 5);

6) HEISMAN, U.S. Trademark Reg. No. 1,397,160, dated June 10, 1986, for "promoting interest, excellence and sportsmanship in intercollegiate football through the medium of an annual award" (*id.* at 6);

7) HEISMAN, U.S. Trademark Reg. No. 3,388,826, dated February 26, 2008, for "video games, namely video game software, interactive video game programs, and video game discs" (*id.* at 7);

8) HEISMAN, U.S. Trademark Reg. No. 3,311,769, dated October 16, 2007, for "footballs" (*id.* at 8); and

9) HEISMAN, U.S. Trademark Reg. No. 3,331,298, dated November 6, 2007, for "shirts, sweat shirts, hats, visors and jackets" (Tilly Declaration, dated December 16, 2008 ("Tilly Decl."), Ex. X).

The Heisman Trust alleges that it has also acquired common law trademark rights through its extensive use of its registered and unregistered trademarks. The Heisman Trust spends more than $650,000 each year advertising and promoting the

ine Issue Pursuant to Local Civil Rule 56.1, dated March 31, 2009 ("Smack Rule 56.1 Statement"). Except where specifically quoted, no further reference to these documents will be made.

Heisman Trophy and the Heisman Marks, and it has licensed the use of the Heisman Marks to various third parties, including Reebok International Ltd. ("Reebok"), in exchange for royalty and other payments.

Smack Apparel is a clothing manufacturer that sells principally to retailers and operates a website through which it also sells its apparel. The Heisman Trust alleges that Smack Apparel first made unlawful use of the Heisman Marks in 1999, when a college football player who was a candidate for the Heisman Trophy that year was arrested for shoplifting. Smack Apparel produced a T-shirt with the word "Heistman" and a depiction of the football player from the Heisman Trophy statuette holding a shopping bag in his hand.

In 2000, Smack Apparel entered into a settlement agreement (the "Settlement Agreement") with the Downtown Athletic Club.[3] In the Settlement Agreement, Smack Apparel stipulated that it would "cease and permanently refrain from manufacturing, displaying, selling or offering for sale any clothing or other merchandise bearing the [Heisman] Marks, or confusingly similar marks, and from displaying or otherwise using the [Heisman] Marks, or confusingly similar marks, on or in connection with any website." (Declaration of Robert Whalen in Support of The Heisman Trophy Trust's Application for a Preliminary Injunction ("Whalen Decl."), Ex. I at 3.) Smack Apparel also agreed that a breach of the Settlement Agreement "would result in continuing material and irreparable harm, and because it would be difficult or impossible to establish the full monetary value of such damage," the hold-er of the Heisman Marks "shall be entitled to injunctive relief." (*Id.* at 4.)

In the years since the Settlement Agreement, Smack Apparel has occasionally produced T-shirts promoting the candidacies of potential Heisman Trophy winners, including one series of T-shirts in 2002, and another in 2007. In the fall of 2008, Smack Apparel produced thirteen varieties of Heisman Trophy-related T-shirts. The Heisman Trust then filed the underlying suit, alleging breach of contract (referring to the Settlement Agreement), as well as trademark infringement and dilution under the United States Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. § 1125(a) and (c). The Amended Complaint alleges that Smack Apparel's merchandise infringes the Heisman Marks by combining "one or more of the Heisman Marks with references to college athletes who are thought to be in contention to win the Heisman Trophy award." (Amended Complaint ¶ 29.) The Court granted The Heisman Trust's request for an order to show cause for a preliminary injunction, heard oral arguments from both parties, and issued the injunction.

As established by the parties' submissions and at oral argument, the 2008 Smack Apparel T-shirts promoting potential Heisman Trophy winners use a variety of word combinations or letter substitutions to refer to a football player's Heisman Trophy candidacy: substituting the "S" with a "5" to write "HEI5MAN" (*see* Amended Complaint, Exs. F, G); substituting the "IS" with a "15" to write "HE15MAN" (*see id.*, Ex. E); and inserting "THE" in smaller font to write "HE. IS.the.MAN" (*see id.*, Exs. H, I, J). The

---

**3.** Smack Apparel disputes that it signed the Settlement Agreement in direct response to the "Heistman" T-shirt and argues that it never understood that shirt to be a use of a mark confusingly similar to the Heisman Marks. (*See* Smack Rule 56.1 Statement 3–4). This dispute, however, is not material to The Heisman Trust's motion for partial summary judgment.

Smack Apparel T-shirts also use a font that is virtually identical to the font used on the T-shirts licensed by The Heisman Trust and on The Heisman Trust's website.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In connection with a motion under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that because of the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223–24 (2d Cir.1994).

### B. *THE SETTLEMENT AGREEMENT*

■ The Heisman Trust has moved for partial summary judgment on its claim for breach of the Settlement Agreement. Smack Apparel asserts that The Heisman Trust was not a party to the Settlement Agreement and therefore lacks standing to enforce the Agreement against Smack Apparel. However, Smack Apparel has offered no facts to dispute that The Heisman Trust is the successor-in-interest to the Downtown Athletic Club, which was a party to the Settlement Agreement. The Settlement Agreement is thus binding on The Heisman Trust, and The Heisman Trust has standing to enforce it. *See Ibar Ltd. v. American Bureau of Shipping*, No. 97 Civ. 8592, 1998 WL 274469, at *5 (S.D.N.Y. May 26, 1998) (non-signatories to an agreement had standing to enforce the agreement's arbitration clause as successors-in-interest to a signatory party).

■ Settlement agreements are governed by contract law. *See Goldman v. Commissioner of Internal Revenue*, 39 F.3d 402, 405 (2d Cir.1994); *SEC v. Levine*, 881 F.2d 1165, 1178–79 (2d Cir.1989). Nonetheless, trademark law is also relevant to deciding The Heisman Trust's motion for partial summary judgment because the Settlement Agreement plainly constitutes a contract to refrain from infringing on or diluting The Heisman Trust's trademarks. The Heisman Trust alleges that Smack Apparel breached the Settlement Agreement by manufacturing and selling T-shirts with marks that are the same as or "confusingly similar" to its own marks. Because a "confusingly similar" use of the Heisman Marks by Smack Apparel would constitute a breach of the Settlement Agreement, the Court will employ a likelihood of confusion analysis under trademark law to evaluate the merits of the Heisman Trust's claim. *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:4 (4th ed.2009) ("The phrase 'confusingly similar' is shorthand for saying that the concurrent use of conflicting marks will create a likelihood of confusion and hence infringement."). The existence of the Settlement Agreement does, however, lessen the need for probing inquiry into some of the factors, as will be discussed below.

## C. *LIKELIHOOD OF CONFUSION* [4]

 Under trademark law, likelihood of confusion "includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 383 (2d Cir.2005) (internal quotations and citations omitted). In order to create a likelihood of confusion a product need not create the impression "that the owner of the mark actually produced the item and placed it on the market," but merely that the mark's owner "sponsored or otherwise approved the use of the trademark." *Id.* at 383–84 (internal quotations and citations omitted).

### 1. *The Polaroid Factors*

 The following eight nonexclusive factors are used to determine when a likelihood of confusion exists: 1) the strength of the plaintiff's mark; 2) the similarity of the plaintiff's mark and defendant's mark; 3) the competitive proximity of their products; 4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; 5) actual confusion between products; 6) defendant's good or bad faith; 7) the quality of defendant's product as compared to plaintiff's; and 8) and the sophistication of the purchasers. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961); *see also Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir.1995).

 The *Polaroid* test "is not a rigid formula where the party with the greatest number of factors weighing in its favor wins. Rather, it is a non-exhaustive cata-

logue of factors to be considered in determining likelihood of confusion." *Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80, 85 (2d Cir.1988). On a motion for summary judgment, what is important "is not how many factors favor each side but whether a reasonable trier of fact might differ as to likelihood of confusion." *Id.*

### a. *Strength of the Mark*

 Analysis of the first *Polaroid* factor is, admittedly, rendered somewhat superfluous by the existence of the Settlement Agreement, because Smack Apparel has agreed not to infringe on the Heisman Marks. Nonetheless, the Heisman Marks are strong. The Heisman Trophy has been presented every year since 1936. As The Heisman Trust notes, the presentation of the award receives a large amount of media attention each year, and the Heisman Marks are licensed to a variety of companies for the purpose of promoting the Heisman Trophy, including apparel companies, television networks, car manufacturers, and a video game company, among others. Smack's attempts to refute the strength of the Heisman Marks were adequately addressed in the Decision and Amended Order, *see Heisman*, 595 F. Supp. 2d at 327, and Smack Apparel has not raised further disputes on this point. No issue of material fact exists as to the strength of the Heisman marks for purposes of the motion for partial summary judgment.

### b. *Similarity of the Marks*

 The second *Polaroid* factor is the most relevant to The Heisman Trust's

---

**4.** The Court has already found The Heisman Trust's marks to be legally valid and protectible for the purposes of this dispute, *see Heisman*, 595 F.Supp.2d at 326, and Smack Apparel has not challenged that determination. A plaintiff may, however, enforce contractually granted rights to protection of a mark even where that mark is not protectible under trademark law. *See, e.g., Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 102 (2d Cir.1989) (although trademark invalid, injunctive relief was properly based on contract rights).

motion for partial summary judgment, as it entails an examination of "whether the similarity of the marks is likely to cause confusion among potential customers." *Arrow Fastener Co.*, 59 F.3d at 394. The focus of this determination is the "overall impression created by a mark." *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 133 (2d Cir.2004).

The Heisman Marks and Smack Apparel's approximation of those marks are very similar. Smack Apparel uses a similar font to the one used by The Heisman Trust's licensees and the one that appears on the Heisman Trust's website. The alterations that Smack Apparel has made to the word "Heisman" on its T-shirts—substituting the "S" with a "5" to write "HEI5MAN"; substituting the "IS" with a "15" to write "HE15MAN"; and inserting "THE" in much smaller font to write "HE.IS.the.MAN"—do not sufficiently distinguish Smack Apparel's reference to "Heisman" from the mark itself. Smack Apparel's references to "Heisman" are confusingly similar to The Heisman Trust's protected mark, especially when viewed at a distance.

■■■■ Smack Apparel asserts that, in evaluating the similarity of the marks at the preliminary injunction stage, the Court improperly relied on a side-by-side comparison of the products. Smack Apparel mischaracterizes the Court's analysis. An improper "side-by-side" comparison is one in which a court focuses too heavily on whether differences between two marks can be spotted when placed immediately next to one another and viewed simultaneously. *See Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537–539 (2d Cir.2005).

Such comparisons are problematic in some cases because they fail to take into account other factors affecting likelihood of confusion, such as the market context in which the products will actually be viewed.[5] *Id.* at 538. But side-by-side comparisons have their place as a "useful heuristic means of identifying the similarities and differences between two products," as long as the ultimate determination is made "with a focus on actual market conditions and the type of confusion alleged." *Id.* at 534.

■■■■ The Court clarifies that it is not relying solely on a detail-oriented, side-by-side comparison, but rather on an evaluation of the overall impression that Smack Apparel's T-shirts are likely to leave on a viewer. Smack Apparel's approximations of the Heisman Marks are sufficiently similar to the marks themselves that a reasonably observant and prudent consumer is likely to get the false impression that Smack Apparel's T-shirts are manufactured, licensed, or approved by The Heisman Trust. Smack Apparel has presented no evidence that the market conditions in which its T-shirts are sold would lessen this confusion. The Court finds that there are no issues of material fact as to the similarity of the marks.

### c. *Competitive Proximity of the Products*

The third *Polaroid* factor clearly favors The Heisman Trust. Smack Apparel admits that its products are sold in some of the same stores as licensed Heisman products, conceding that the products in question were in competitive proximity in the marketplace. (*See* Smack Rule 56.1 Statement 11). There is no issue of material fact on this matter.

---

5. In fact, the danger of side-by-side comparison is usually that it tends to highlight the minor differences between marks or products, thus running the risk of understating, rather than exaggerating, the overall likelihood of confusion. *See, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 117 (2d Cir.2006).

#### d. Likelihood of Bridging the Gap

As discussed in the Decision and Amended Order, there is no need for The Heisman Trust to make a showing that it will "bridge the gap" and offer a product like Smack Apparel's, because it has already granted a license to Reebok to produce T-shirts promoting potential Heisman Trophy winners.

#### e. Actual Confusion

Although evidence of actual confusion can strongly support a finding of likelihood of confusion, see Morningside Group Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 141 (2d Cir.1999), such evidence is not required for a showing of likelihood of confusion, see Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir.1986). Neither party has introduced any evidence that supports a finding of actual confusion or a lack thereof. The fifth Polaroid factor is thus neutral.

#### f. Good Faith

The Court next examines whether Smack Apparel "adopted its mark with the intention of capitalizing on [The Heisman Trust's] reputation and goodwill and any confusion between his and the senior user's product." Edison Bros. Stores, Inc. v. Cosmair, Inc., 651 F.Supp. 1547, 1560 (S.D.N.Y.1987). Smack Apparel has denied any such intention, and its denials are plausible. The existence of bad faith is therefore a disputed issue of fact. However, although a finding of bad faith could weigh significantly in The Heisman Trust's favor, a finding of good faith would carry little weight in Smack Apparel's favor. See Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 19 (1st Cir.2004) (the good faith factor "usually matters only where an alleged infringer copied a mark in bad faith; a converse finding of good faith carries little weight."); Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 596 (5th Cir.1985) (finding that good faith was not a defense to trademark infringement because "if potential purchasers are confused, no amount of good faith can make them less so. Bad faith, however, may, without more, prove infringement."). Therefore, even viewing all facts regarding good faith in Smack Apparel's favor and assuming good faith, the sixth Polaroid factor is neutral.

#### g. Quality of the Respective Products

Neither party has made any arguments or introduced any evidence as to the quality of their respective products or as to how the quality of these products might increase or decrease the likelihood of confusion. The seventh Polaroid factor is thus neutral.

#### h. Sophistication of the Purchasers

Neither party has made any arguments directly addressing the sophistication of the purchasers. Although Smack Apparel has provided a number of news articles to show that its products have a loyal following and that some of its customers are aware that Smack Apparel is a manufacturer of unlicensed apparel, none of this significantly affects the eighth Polaroid factor. The relevant consumer group for the likelihood of confusion analysis is not Smack Apparel's customers but purchasers of college athletic apparel in general. No evidence has been presented that such purchasers are more likely than any other group to recognize Smack Apparel's uses of Heisman-like marks as distinct from the Heisman Marks themselves.

In sum, four of the eight Polaroid factors strongly favor The Heisman Trust, and the remaining factors are neutral. The Court will now examine other factors

that Smack Apparel argues would lessen the likelihood of confusion.

### 2. *Other Factors Regarding Likelihood of Confusion*

■ Smack Apparel presents several other arguments regarding likelihood of confusion that do not go to particular *Polaroid* factors. Smack Apparel first argues that the media publicity it has received has created a public awareness of Smack Apparel as a manufacturer of unlicensed apparel, thus lessening the overall likelihood of confusion. In support of this argument, Smack Apparel has submitted a number of news articles referring to Smack Apparel's unlicensed T-shirts. The Court is not persuaded that this evidence raises any issues of material fact. The existence of these news articles shows, at best, that *some* consumers might be aware that Smack Apparel's T-shirts were unlicensed. It is highly possible that a reasonably observant and prudent consumer might not have read or heard about the articles, and thus would be unaware that Smack Apparel's T-shirts are unlicensed. The news articles fail to create an issue of material fact as to the confusing similarity that is immediately apparent upon comparison of Smack Apparel's T-shirts and the Heisman Marks.

■ Smack Apparel also argues that the incorporation of its logo into its T-shirts signals to consumers that the T-shirts are unlicensed, particularly in light of the news articles described above. The Court first notes that the Smack Apparel logo is exceedingly small in comparison with the "HE15MAN," "HEI5MAN" and "HE.IS.the.MAN" marks. Further, the Second Circuit has held that the trade name or logo of the infringing user on the infringing product can in certain cases aggravate, rather than mitigate, the likelihood of confusion, when the trade name or logo risks creating the impression that the owner of the mark licensed or permitted its use. *See Playtex Products, Inc. v. Georgia–Pacific Corp.*, 390 F.3d 158, 165 (2d Cir.2004) (*citing Arrow Fastener Co.*, 59 F.3d at 395). The Court finds this to be such a case, especially considering that some of the apparel officially licensed by The Heisman Trust displays the logo of the licensee.

■ Similarly, Smack Apparel argues that it places disclaimers on its T-shirts that should help to dispel consumer confusion. The Court first notes that there are unresolved questions of fact as to when Smack Apparel began using the disclaimers, when it switched from a more generic disclaimer ("This shirt is NOT LICENSED or ENDORSED by any institution or organization. . . .") to a Heisman-specific disclaimer (adding the words "including the HEISMAN TROPHY TRUST"), and whether the disclaimers were present on the Smack Apparel T-shirts at issue here. These questions notwithstanding, disclaimers have been found to be of limited value in alleviating an otherwise substantial likelihood of confusion, especially where, as here, the disclaimers are not particularly prominent (measuring 3.5 to 4.5 inches wide and .5 to .75 inches high) and use vague, general language. *See ProFitness Physical Therapy Ctr. v. Pro–Fit Orthopedic & Sports Physical Therapy, P.C.*, 314 F.3d 62, 70–71 (2d Cir.2002) (where substantial confusion is likely, more than simple "not affiliated in any way" language is required); *Yurman Design, Inc. v. Diamonds & Time*, 169 F.Supp.2d 181, 185–86 (S.D.N.Y.2001) (small font size of disclaimer in comparison to mark itself contributes to disclaimer's ineffectiveness in dispelling confusion); *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F.Supp. 1259, 1276–77 (S.D.N.Y. 1990) (disclaimer failed to alleviate likeli-

hood of confusion due to small print and non-prominent placement). Even resolving all factual inconsistencies or disputes regarding the disclaimers in Smack Apparel's favor, the disclaimers are insufficient to create an issue of material fact as to the confusing similarity between Smack Apparel's approximation of the Heisman Marks and the Marks themselves.

■ Smack Apparel also raises what amounts to a parody defense, asserting that its "He15man" shirt "depends on a lack of confusion to make sense," and that the shirt was "intended to be humorous or clever." (Smack Br. 17). But even if the T-shirts were intended as parodies, they do not warrant protection as such because they create a substantial likelihood of confusion. *See, e.g., Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.*, 886 F.2d 490, 494 (2d Cir.1989) ("A parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is not the original and is instead a parody. To the extent that it does only the former but not the latter, it is not only a poor parody but also vulnerable under trademark law, since the customer will be confused."). Smack Apparel's T-shirts fail to convey that they are not "the original" because they give the strong impression of being officially licensed or approved Heisman T-shirts; any parody intended is unclear at best. Smack's parody defense thus fails to create an issue of material fact.

Smack Apparel fails to raise any arguments that create an issue of material fact. A clear likelihood of confusion exists between the Heisman Marks and Smack Apparel's approximations of those marks, and

Smack Apparel thus has breached the Settlement Agreement by designing, manufacturing, and selling products that were confusingly similar to the Heisman Marks.

### D. *SMACK APPAREL'S ESTOPPEL AND LACHES DEFENSES*

■ Smack Apparel argues that The Heisman Trust unreasonably delayed enforcing its trademark and contractual rights once it first learned of a new Heisman-related T-shirt in 2007, and that Smack Apparel suffered detrimental reliance on this delay because it took The Heisman Trust's inaction to mean that the "He15man" shirt was not an infringement or a violation of the Settlement Agreement. Putting aside any possible questions of material fact as to these arguments,[6] the Settlement Agreement expressly states that a failure to enforce any right provided "shall not be construed as a waiver or a relinquishment of the future of such term or right, which shall continue in full force and effect." (Whalen Decl., Ex. I at 5). Such contractual provisions are enforceable and capable of defeating a laches or estoppel defense. *See Sporre S.A. de C.V. v. International Paper Co.*, No. 99 Civ. 2638, 1999 WL 1277243, at *4–5 (S.D.N.Y. Dec. 30, 1999); *Wyeth v. King Pharma., Inc.*, 396 F.Supp.2d 280, 290–91 (E.D.N.Y.2005) (*citing Town of Hempstead v. Incorporated Village of Freeport*, 15 A.D.3d 567, 790 N.Y.S.2d 518, 520 (2005)). Smack Apparel has not provided any argument as to why this provision should not be enforced, and thus the Court finds that Smack Apparel's estoppel and laches defenses fail as a matter of law.

**6.** Estoppel and laches defenses normally involve questions of fact inappropriate for resolution on summary judgment, *See Country Floors, Inc. v. Partnership Composed of Gepner & Ford*, 930 F.2d 1056, 1066 (3d Cir.1991).

Here, however, the Settlement Agreement obviates the need for further determinations of material fact that might otherwise be required.

## E. IRREPARABLE HARM AND IN-JUNCTIVE RELIEF

■ To obtain a permanent injunction, a plaintiff must demonstrate (1) actual success on the merits and (2) irreparable harm. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 290 (S.D.N.Y.2003). The Heisman Trust has met both of these requirements.

■ In cases of trademark infringement, a showing of likelihood of confusion establishes irreparable harm. *See Cartier v. Aaron Faber, Inc.*, 512 F.Supp.2d 165, 171 (S.D.N.Y.2007).[7] Further, and more importantly, the Settlement Agreement stipulates that breach of the Settlement Agreement "would result in continuing and irreparable harm" and that "because it would be difficult or impossible to establish the full monetary value of such damage, [the Heisman Trust] shall be entitled to injunctive relief." (Whalen Decl., Ex. I at 4). The Heisman Trust thus is entitled to a permanent injunction against Smack Apparel's infringing conduct.

## F. ATTORNEYS' FEES

The Heisman Trust seeks an award of attorneys' fees under the Settlement Agreement, which provides for reimbursement of its "reasonable attorneys' fees and other expenses incurred." (Whalen Decl. Ex. I at 4–5). Smack Apparel argues that the hourly rates billed by Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), the law firm retained by The Heisman Trust, are excessive.

■ Any attorney who applies for court-ordered compensation in the Second Circuit "must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *Miroglio S.P.A. v. Conway Stores, Inc.*, No. 05 Civ. 121, 2009 WL 1490546, at *3 (S.D.N.Y. June 22, 2009) (*quoting New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983)). The Heisman Trust has submitted only a cursory breakdown of hours expended and amounts billed by Cleary Gottlieb, asserting that the invoices and time entry documents contain privileged information. (*See* Declaration of Lawrence B. Friedman in Support of the Heisman Trophy Trust's Motion for Partial Summary Judgment 2–3.) Cleary Gottlieb has offered to provide further documentation upon request.

The Court cannot make a determination of whether the attorneys' fees sought are reasonable without such documentation. The Heisman Trust is directed to submit, within ten days, detailed documentation of all work performed by and rates billed for each attorney, and any other documentation that would support the requested attorneys' fees award. Such documents may be filed under seal, if necessary.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 32) for partial summary judgment of the plaintiff The Heisman Trophy Trust ("The Heisman Trust") is GRANTED; it is further

**ORDERED** that defendant Smack Apparel Corporation ("Smack Apparel") is permanently enjoined from, within the territorial jurisdiction of the United States, using the Heisman Trophy Trust's registered or common law trademarks or ser-

---

7. The Court is aware that this standard has been called into question by some courts in the wake of the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

*See, e.g., Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir.2008). However the Court declines to examine the issue further here because of the stipulations present in the Settlement Agreement.

vice marks (collectively, the "Heisman Marks") or any other copy, reproduction or colorable imitation or simulation of the Heisman Marks on or in connection with Smack Apparel's goods or services; using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Smack Apparel's clothing or other goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to or dilutive of the Heisman Marks; using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Smack Apparel's clothing or other goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by the Heisman Trophy Trust, or are sponsored or authorized by or in any way connected or related to the Heisman Trophy Trust; and passing off, palming off, or assisting in passing off or palming off, Smack Apparel's website, clothing, or other goods or services, as those of the Heisman Trophy Trust, or one of its licensees, or otherwise continuing any and all acts of unfair competition as alleged in the Amended Verified Complaint; and it is further

**ORDERED** that The Heisman Trust submit further documentation in support of its application for attorneys' fees within seven days of the date of this Order; and it is finally

**ORDERED** that The Heisman Trust inform the Court within seven days of the date of this Order as to its contemplation, in light of this decision, with regard to prosecution of the remaining claims asserted in this litigation.

**SO ORDERED**