**LOUIS VUITTON MALLETIER,**
Plaintiff–Appellant,

v.

**DOONEY & BOURKE, INC.,**
Defendant–Appellee.

Docket No. 04–4941–CV.

United States Court of Appeals,
Second Circuit.

Argued Sept. 9, 2005.

Decided June 30, 2006.

---

Robert E. Shapiro, Chicago, IL (Peter J. Barack, Wendi E. Sloane, Shermin Izadpanah, Barack Ferrazzano Kirschbaum Perlman & Nagelberg LLP, Chicago, IL; Theodore C. Max, Charles A. LeGrand, Mintz Levin Cohn Ferris Glovsky and Popeo PC, New York, NY, of counsel), for Plaintiff–Appellant.

Douglas D. Broadwater, New York, N.Y. (Roger G. Brooks, Cravath, Swaine & Moore LLP, New York, NY; Thomas J. McAndrew, Thomas J. McAndrew & Associates, Providence, RI, of counsel), for Defendant–Appellee.

Before CARDAMONE, McLAUGHLIN, and POOLER, Circuit Judges.

CARDAMONE, Circuit Judge.

Louis Vuitton Malletier (Vuitton or plaintiff) appeals from an August 27, 2004 judgment of the United States District Court for the Southern District of New York (Scheindlin, J.) that denied plaintiff's motion for a preliminary injunction in its trademark infringement suit against defendant Dooney & Bourke, Inc. (Dooney & Bourke or defendant).

We deal on this appeal with the trademark of a trendy luxury women's handbag, a handbag so instantly popular with purchasers that legions of imitators quickly appeared on the fashion scene after plaintiff Vuitton introduced it in October 2002. This is the second infringement case we have heard regarding the same trademark, but with a different alleged infringer. We cannot help but observe that for the person carrying it, a handbag may serve as a practical container of needed items, a fashion statement, or a reflection of its owner's personality; it may fairly be said that in many cases a handbag is so essential that its owner would be lost without it.

In the earlier case before us, *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d Cir.2005) *(Burlington Coat Factory)*, we

vacated a judgment of the district court that had denied a preliminary injunction to Vuitton in litigation against defendants Burlington Coat Factory Warehouse Corp., et al. In remanding for further proceedings, we emphasized that to determine whether two products are confusingly similar it is improper to conduct a side-by-side comparison in lieu of focusing on actual market conditions and the type of confusion alleged. *Id.*

This time, Vuitton seeks a preliminary injunction against Dooney & Bourke, another handbag manufacturer. Vuitton's trademark Multicolore handbag design is the same as it was in the earlier case, but the allegedly infringing handbag, Dooney & Bourke's "It–Bag," is different from the one in the earlier case. When the district court decided this case and denied plaintiff's motion for a preliminary injunction, *see Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 340 F.Supp.2d 415, 453 (S.D.N.Y.2004) (*Dooney & Bourke*), on August 27, 2004, it was, of course, unaware of our view set out in *Burlington Coat Factory,* because *Burlington* was decided on October 12, 2005, over a year after the district court's opinion here.

We now affirm, in part, and vacate and remand, in part. We affirm that part of the district court's order that denied a preliminary injunction on the basis of an alleged dilution of plaintiff's mark under federal law. But, we vacate and remand that portion of the order addressing Vuitton's Lanham Act and New York state trademark infringement and unfair competition claims, as well as that portion of the order assessing plaintiff's state law dilution claims.

## BACKGROUND

### A. *Parties and Facts*

Vuitton, a French design firm, began selling trunks and accessories in the United States in 1893. In 1896 it created the Toile Monogram, featuring entwined LV initials with three motifs: a curved diamond with a four-point star inset, its negative, and a circle with a four-leafed flower inset. Vuitton registered trademarks in this design pattern as well as the individual unique shapes with the United States Patent and Trademark Office. Having been used exclusively and continuously, those trademarks, the Louis Vuitton Toile Monogram Designs (Toile marks), are now incontestible. *See* 15 U.S.C. § 1065 (providing, with certain exceptions, that registered marks in continuous use for five consecutive years after registration are incontestible).

In October 2002 plaintiff launched a series of handbags featuring "new signature designs" created by Marc Jacobs and Japanese artist Takashi Murakami. The new bags (Murakami handbags) incorporated an update on the fashion house's famous Toile marks. The fresh design—coined the Louis Vuitton Monogram Multicolore pattern (Multicolore mark)—was a modified version of the Toile marks, printed in 33 bright colors (Murakami colors) on a white or black background.

Plaintiff states that it spent over $4 million in 2003–2004 advertising and promoting the Multicolore mark and associated handbags. In addition, the new design garnered significant media attention. CBS's *The Early Show* and publications ranging from *USA Today* and *The New York Times* to *People, Women's Wear Daily, Marie Claire,* and *Vogue* all featured the Murakami handbags. Celebrities including Jennifer Lopez, Reese Witherspoon, and Madonna were photographed with the bags in tow.

At the time plaintiff filed its complaint, it had sold nearly 70,000 handbags and accessories with the Multicolore mark de-

sign in the United States for between $360 and $3,950 each, amounting to over $40 million. Of that sum, $25 million was attributable to the white background design and $16 million to the black background design.

Defendant Dooney & Bourke, an American handbag designer and manufacturer, was founded in 1975. Since 2001 as part of the Dooney & Bourke's "Signature" and "Mini Signature" lines, the company has sold bags featuring the DB monogram of interlocking initials, a registered trademark, in a repeated pattern. The handbags sell for between $125 and $400.

In the fall of 2002 Peter Dooney, president and chief designer of Dooney & Bourke, began collaborating with *Teen Vogue* magazine on a joint promotional project as the magazine was being launched. The magazine selected a group of teenaged girls to travel with Dooney to Italy in March 2003 to help develop Dooney & Bourke handbags appealing to teenagers. The group, dubbed the "It Team," was photographed looking into Vuitton's store window display featuring handbags with the Multicolore marks on a white background. Another photograph taken during the trip showed the group in a factory viewing a swatch of fabric with the Multicolore mark on a black background.

A year later, in late July 2003 Dooney & Bourke introduced its "It–Bag" collection, which featured the DB monogram in an array of bright colors set against a white background. The intertwined initials, with the "D" and the "B" displayed in contrasting colors, were printed forward and backward in repeating diagonal rows. The handbags also sported a multicolor zipper, with fabric similar to that used by Vuitton, and a small pink enamel heart bearing the legend "Dooney & Bourke" on a tag hanging from the handle. In October 2003 Dooney & Bourke began selling the hand-

bags with a black background. The It–Bag collection now includes a variety of colored backgrounds (periwinkle, bubble gum, grape) in addition to black and white.

## B. *District Court Proceedings*

After becoming aware of Dooney & Bourke's It–Bag and investigating through counsel the likelihood of infringement, plaintiff sent a cease-and-desist letter to defendant on April 16, 2004 and filed this action in the Southern District of New York on April 19, 2004. Vuitton claimed trademark infringement, unfair competition and false designation, and trademark dilution, under federal and New York state law. Plaintiff moved for a preliminary injunction on April 28, 2004, but before ruling on the motion, the district court granted defendant time to conduct its own survey. The court held a seven-day hearing on the motion for a preliminary injunction.

On August 27, 2004 the trial court issued an opinion denying Vuitton's motion for a preliminary injunction. It held that plaintiff's Multicolore mark, consisting of the traditional LV pattern in the 33 Murakami colors on a white or black background, was an inherently distinctive mark that had achieved secondary meaning in the marketplace. *Dooney & Bourke,* 340 F.Supp.2d at 438. Despite this finding, the trial court determined that there was no likelihood of confusion between defendant's It–Bag pattern and plaintiff's Multicolore mark. *Id.* at 447. It also ruled that plaintiff had not proven dilution under either its federal or state law claims. *Id.* at 452–53.

This appeal followed.

## DISCUSSION

### I Preliminary Injunction and Standard of Review

To obtain a preliminary injunction, plaintiff must show irreparable harm

absent injunctive relief, and either a likelihood of success on the merits, or a serious question *going to the merits to make them a fair ground for trial,* with a balance of hardships tipping decidedly in plaintiff's favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). We review for abuse of discretion the district court's denial of a preliminary injunction. *1–800 Contacts, Inc. v. WhenU.Com, Inc.,* 414 F.3d 400, 406 (2d Cir.2005). A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law. *Id.*

█ Vuitton contends the district court applied the wrong standard for its requested preliminary injunction, requiring it to meet the heightened burden of proof necessary for a mandatory injunction rather than a prohibitory injunction. It takes this position based on the district court's comment that a party seeking an injunction must show not only a likelihood, but a "clear" or "substantial" likelihood, of success on the merits, "where the injunction sought is mandatory—i.e., it will alter rather than maintain the status quo." *Dooney & Bourke,* 340 F.Supp.2d at 438 (citing *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 24 (2d Cir.2004)).

█ "The distinction between mandatory and prohibitory injunctions is not without ambiguities or critics." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 34 (2d Cir.1995). A preliminary injunction is usually prohibitory and seeks generally only to maintain the status quo pending a trial on the merits. *Id.* A prohibitory injunction is one that "forbids or restrains an act." *Black's Law Dictionary* 788 (7th ed.1999). For example, in the typical trademark case a prohibitory injunction seeks to stop alleged infringement. A mandatory injunction, in contrast, "orders an affirmative act or man-

dates a specified course of conduct," *id.,* such as requiring a defendant to turn over phone numbers featuring a tradename or to assign a trademark, *see, e.g., Sunward Elecs.,* 362 F.3d at 24; *Zwack v. Kraus Bros. & Co.,* 237 F.2d 255, 258, 261 (2d Cir.1956).

Dooney & Bourke argues that although the district court *cited* the standard for a mandatory injunction, it *applied* the standard for a prohibitory injunction. We cannot agree. Not only did the court refer to the standard for a mandatory injunction, *Dooney & Bourke,* 340 F.Supp.2d at 428, but also it stated that granting an injunction to Vuitton would be "extraordinary relief," and it implied a "strong" likelihood of success on the merits, not just a likelihood of success, *id.* at 452. Thus, we think the district court placed too high a burden on plaintiff.

## II Trademark Infringement

Vuitton claims trademark infringement under both § 32 of the Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1114, and § 43(a) of that Act, 15 U.S.C. § 1125(a). Because the trademark at the core of this case—the Multicolore mark—is unregistered, we focus our discussion on the § 43(a) claim. Yet, we note that the same analysis applies to claims of trademark infringement under § 32. *See Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 146 (2d Cir.2003).

Section 43(a) of the Lanham Act prohibits a person from using "any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods...." 15 U.S.C. § 1125(a). This section protects from infringement unregistered trademarks, *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 61 (2d Cir.2000), as well

as trade dress and product design, *see Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 209, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000).

■ We analyze trademark infringement claims under the familiar two-prong test described in *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072 (2d Cir.1993). First, we look to see whether plaintiff's mark merits protection, and second, whether defendant's use of a similar mark is likely to cause consumer confusion. *Id.* at 1075. The central consideration in assessing a mark's protectability, namely its degree of distinctiveness, is also a factor in determining likelihood of confusion. *Playtex Prods. v. Georgia–Pacific Corp.,* 390 F.3d 158, 161 (2d Cir.2004). On appeal, Vuitton contends the district court blurred Vuitton's distinctive trademark by reducing it to an undefined and unprotectable "look," and also focused improperly on a side-by-side comparison to assess likelihood of confusion. We discuss each contention in turn.

### A. *Recognizing and Defining Vuitton's Trademark*

■ We begin by assessing the degree to which plaintiff's trademark merits protection. Vuitton claims a new trademark, currently unregistered, consisting of a design plus color, that is, the traditional Vuitton Toile pattern design—entwined LV initials with the three already described motifs—displayed in the 33 Murakami colors and printed on a white or black background. In evaluating this mark's protectability, it is useful to be aware of the contours and limits of what Vuitton asserts is its trademark.

Notably, plaintiff does not claim a separate trademark in the colors alone. If it were to claim such a trademark, it would be required to show that the multicolors, set on a white or black background, create a separate and distinct commercial impression, apart from the monogram motif design, and that the colors serve to indicate Vuitton as the source. *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 7:2, at 7–6.1 (4th ed. 2005) *(McCarthy); see also Wal–Mart Stores,* 529 U.S. at 212, 120 S.Ct. 1339 ("We [have] held that a color could be protected as a trademark, but only upon a showing of secondary meaning."); *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 174, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (recognizing trademark in green-gold color of dry cleaning press pad).

Instead, plaintiff maintains that the polychromatic display is an "essential part" of its trademarked design, and that other handbag manufacturers are free to create their own brightly-colored handbags so long as they do not do so in a manner confusingly similar to the Vuitton combination of color and defined design. With regard to its own trademark, plaintiff asserts that it "cannot dissect the color from the pattern. . . . [T]he strength of the mark here is . . . the synergy between the colors and the [traditional] Louis Vuitton trademarks."

Vuitton does not seek to protect the overall look of its handbags, that is, its trade dress, but rather the narrower trademark it has established in its colored pattern. We have defined trade dress as "the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 168 (2d Cir.1991). By way of distinction the Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof" which is used or intended to be used by a person "in commerce . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to

indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127; *see also Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 547 (6th Cir.2005) ("[T]rademark and trade dress are two distinct concepts under the Lanham Act."); *McCarthy* §§ 8:1–8:3 (comparing trademarks and trade dress). Although trade dress and trademarks are both protected by § 43 of the Lanham Act, 15 U.S.C. § 1125(a), the fact that Vuitton seeks only protection of a trademark and not trade dress informs our understanding of the precision of its mark.

In "determining whether an unregistered mark is entitled to protection under § 43(a)," *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992), "the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable," *id.* The breadth of trademarks registrable under § 2, 15 U.S.C. § 1052, is not limited to word marks such as "Nike." *See Wal–Mart Stores*, 529 U.S. at 209, 120 S.Ct. 1339. A person may also claim a trademark in a symbol, such as the Nike "swoosh," *see id.*, a device, or any combination thereof, *see* 15 U.S.C. § 1127.

To qualify for registration under § 2, or to establish protectability under § 43(a), "a mark must be sufficiently 'distinctive' to distinguish the registrant's goods from those of others." *See Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005). A plaintiff can establish a mark as distinctive by showing that the mark is "inherently distinctive," i.e., intrinsically capable of identifying its source, or by demonstrating that the mark has acquired "secondary meaning." *Id.*

■ Basic geometric shapes, basic letters, and single colors are not protectable as inherently distinctive. *Id.* at 383; *see Qualitex*, 514 U.S. at 162–63, 115 S.Ct. 1300. These symbols may be protected

only upon a showing of secondary meaning. *See Qualitex*, 514 U.S. at 162–63, 115 S.Ct. 1300. However, "stylized letters or shapes are not 'basic,' and are protectable when original within the relevant market." *Star Indus.*, 412 F.3d at 383 (holding stylized "O" on vodka bottle protectable as inherently distinctive, but weak, mark).

Vuitton's Multicolore mark, consisting of styled shapes and letters—the traditional Toile mark combined with the 33 Murakami colors—is original in the handbag market and inherently distinctive. The Toile pattern, on which it is based, has been a famous indicator of Louis Vuitton for over a century. The new Multicolore mark was created as a source-identifier for Vuitton in the new millennium. It is a strong mark. The mark earned praise and became famous almost instantly. We agree with the district court that the Multicolore mark is protectable both because it is inherently distinctive and because it has acquired secondary meaning.

### B. Assessing the Likelihood of Confusion

■ We turn next to the question of likelihood of confusion. In analyzing this second prong of the test for trademark infringement, courts apply the non-exclusive multi-factor test developed by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.1961), and consider: (1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers. *See, e.g., Brennan's Inc. v. Brennan's Rest.*, 360 F.3d 125, 130 (2d Cir.2004). "A district court's findings with regard to each individual factor are subject to the clearly

erroneous standard of review, but the ultimate issue of the likelihood of confusion is reviewed de *novo.*" *Streetwise Maps, Inc. v. VanDam, Inc.,* 159 F.3d 739, 743 (2d Cir.1998).

■■■ The similarity of the marks is a key factor in determining likelihood of confusion. *Burlington Coat Factory,* 426 F.3d at 537. "To apply this factor, courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the 'totality of factors that could cause confusion among prospective purchasers.'" *Id.* (quoting *Gruner + Jahr USA,* 991 F.2d at 1078).

The district court here noted that there were "obvious similarities" between the Louis Vuitton and Dooney & Bourke handbags. However, citing *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.,* No. 04 Civ. 2644, 2004 WL 1161167, at *8 (S.D.N.Y. May 24, 2004), it determined that despite the similarities, the two marks were not confusingly similar. *See Dooney & Bourke,* 340 F.Supp.2d at 440.

It appears the trial court made the same mistake that we criticized in *Burlington Coat Factory:* inappropriately focusing on the similarity of the marks in a side-by-side comparison instead of when viewed sequentially in the context of the marketplace. The district court reasoned

> [I]t could not be more obvious that Louis Vuitton uses the initials "LV," while Dooney & Bourke uses its trademarked "DB" logo. Thus, *a consumer seeing these trademarks printed on these bags, either up close or at a distance, is not likely to be* confused.... [T]he Dooney & Bourke bags only use their "DB" initials; there are no geometric shapes interspersed with the monogram.... [T]he colors used on the Dooney & Bourke bag are noticeably toned

down, and consequently fail to evoke the characteristic "friction" sparked by Murakami's bright, clashing colors, the Louis Vuitton marks create a very different overall impression (i.e., large interspersed shapes and initials in crisp, bold colors) than the Dooney & Bourke bags (i.e., tightly interlocked initials in dulled colors).

*Dooney & Bourke,* 340 F.Supp.2d at 440 (emphasis added). We disapproved almost identical language in *Burlington Coat Factory.* *See Burlington Coat Factory,* 426 F.3d at 537–38.

■■■ Utilizing a side-by-side comparison can be a useful "heuristic means of investigating similarities and differences in ... respective designs," so long as a court maintains a "focus on the ultimate issue of the likelihood of consumer confusion." *Id.* at 538. Courts should keep in mind that in this context the law requires only confusing similarity, not identity. *See, e.g., The Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 962–63 (2d Cir.1996). Further, where, as here, the plaintiff claims initial-interest and post-sale confusion, market conditions must be examined closely to see whether the differences between the marks are "likely to be memorable enough to dispel confusion on serial viewing." *Burlington Coat Factory,* 426 F.3d at 538.

The district court erred because it based its determination that confusion between the Vuitton and Dooney & Bourke marks was unlikely at least in part on an overemphasized side-by-side comparison. This is suggested by the district court's comment that "no amount of expert opinion, legal analysis, or demonstrative evidence can overcome the clarity that comes from direct observation." *Dooney & Bourke,* 340 F.Supp.2d at 421.

We do not believe the district court clearly erred with respect to the other Polaroid factors. Nonetheless, because no single factor is dispositive, we must remand for the district court to revisit the entire analysis, under the new standard described here and in *Burlington Coat Factory*. Upon remand, the district court should keep in mind that "[n]o single factor is dispositive, nor is a court limited to consideration of only these factors." *Brennan's*, 360 F.3d at 130. Accordingly, we must vacate its order insofar as it declined to issue a preliminary injunction and remand the case to allow the district court to reassess Vuitton's claim of a design plus color trademark under the Lanham Act.

### III Dilution

 Vuitton also appeals the denial of its motion for a preliminary injunction on its Federal Trademark Dilution Act claim (Trademark Dilution Act or Act), 15 U.S.C. § 1125(c). The discussion of this subject begins with the Federal Trademark Dilution Act of 1995, Pub.L. 104–98, 109 Stat. 985, which amended § 43 of the Lanham Act, 15 U.S.C. § 1125, by adding a new § 43(c) to provide a cause of action for dilution of "famous" marks. That new section is codified at 15 U.S.C. § 1125(c). The Trademark Dilution Act provides that "the owner of a famous mark shall be entitled ... to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1). To establish a violation of the Act, a plaintiff must show that: "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark

by diminishing the capacity of the mark to identify and distinguish goods and services." *Savin Corp. v. Savin Group*, 391 F.3d 439, 448–49 (2d Cir.2004).

The new section lists factors a court may consider in deciding whether a mark qualifies for protection as a famous mark. 15 U.S.C. § 1125(c)(1). But since Vuitton's mark is conceded to be a famous mark we need not discuss those factors. Under this law, the only relief a plaintiff may obtain is an injunction upon a finding of a defendant's liability for diluting the distinctive quality of a famous mark, except in cases of willful dilution where damages also may be awarded. 15 U.S.C. § 1125(c)(2). State law is not preempted, as it is in patent and copyright laws. *See* H.R.Rep. No. 104–374, at 7 (1995), *as reprinted* in 1995 U.S.C.C.A.N. 1029, 1035.

The Trademark Dilution Act also amended § 45 of the Lanham Act, 15 U.S.C. § 1127. The amended law defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127.

In *Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418, 422–24, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003), the Supreme Court ruled on the Act in a suit between Victoria's Secret, concededly a famous mark, and Victor's Little Secret, a small retail store owned and operated in an Elizabethtown, Kentucky mall by Victor and Cathy Moseley. The Supreme Court held there must be a showing of actual—rather than a likelihood of—dilution to entitle the holder of a famous mark to injunctive relief. *Id.* at 433, 123 S.Ct. 1115. The fact that consumers mentally associate the junior mark with the famous mark, at least where the

marks—as in the case at hand—are not identical, will not establish actionable dilution. The reason for this rule is that such mental association "will not necessarily reduce the capacity of the famous mark to identify the goods of its owner," as the statute requires. *Id.* Nor did the Supreme Court think "blurring" or "tarnishing" of a mark was ordinarily a consequence of mental association. *Id.* at 434, 123 S.Ct. 1115.

■ Assuming that Vuitton can prove fame and distinctiveness, it must still offer evidence of actual dilution. *Moseley,* 537 U.S. at 433, 123 S.Ct. 1115; *see* 15 U.S.C. § 1125(c)(1). Accordingly, "similarity in the marks—even a close similarity—will not suffice to establish per se evidence of actual dilution." *Savin Corp.,* 391 F.3d at 453. As the Supreme Court instructs, "the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution." *Moseley,* 537 U.S. at 433, 123 S.Ct. 1115.

We agree with the district court that Vuitton has not offered any evidence of actual dilution. Specifically, plaintiff has failed to show that Dooney & Bourke's use of a similar mark has reduced the capacity of Vuitton's Multicolore mark to identify handbags and accessories manufactured by Vuitton. *See* 15 U.S.C. § 1127; *Moseley,* 537 U.S. at 433, 123 S.Ct. 1115. The denial of a preliminary injunction on the dilution claim must therefore be affirmed.

### IV State Law Claims

■ Vuitton claims, in addition, trademark infringement and unfair competition under New York state law, and trademark dilution and injury to business reputation under N.Y. Gen. Bus. Law § 360-l.

■ We analyze claims under New York's unfair competition statute in a similar fashion to how we analyze claims under the Lanham Act. *See Burlington Coat Factory,* 426 F.3d at 539 n. 5. For the reasons stated above, we hold the district court erred in determining that Vuitton could not prove likelihood of confusion under New York state law. We therefore must vacate the order insofar as it ruled Vuitton was not entitled to a preliminary injunction on state trademark infringement and unfair competition claims.

■ Finally, we remand also with respect to plaintiff's claims of dilution under state law, despite having affirmed the district court on plaintiff's claim of dilution under federal law. The federal dilution standard "requires a showing of actual dilution, . . . and, thus, is more stringent than the New York standard." *Savin Corp.,* 391 F.3d at 456. The New York standard, on the other hand, requires a showing of a mere "likelihood of dilution." *Id.*

To analyze likelihood of dilution under N.Y. Gen. Bus. Law § 360-l, courts employ a multi-factor test. *See Burlington Coat Factory,* 426 F.3d at 539 n. 5. One of the factors to be considered for determining likelihood of dilution is also a factor in likelihood of confusion analysis for trademark claims under the Lanham Act; namely, courts must assess the "similarity of the marks" in a similar fashion as they do under the Lanham Act. *Id.* Because we are remanding for the district court to reconsider the similarity of the marks under the Lanham Act, we believe it would be useful and proper to remand on the state law dilution claims as well.

### CONCLUSION

For the foregoing reasons, we affirm in part, and vacate and remand in part, the order of the district court. On remand, it should consider the precise trademark

claimed by the plaintiff and whether, under market conditions and when viewed sequentially, Vuitton can prove likelihood of confusion between its Multicolore mark and the pattern of Dooney & Bourke's It–Bag.