LUV N' CARE, LTD. and
Admar International,
Inc., Plaintiffs,

v.

REGENT BABY PRODUCTS CORP.
d/b/a/ Baby King, Defendant.

No. 10 Civ. 9492.

United States District Court,
S.D. New York.

Dec. 11, 2013.

Opinion Denying Reconsideration
Jan. 23, 2014.

Lee A. Goldberg, Esq., Morris E. Cohen, Esq., Goldberg Cohen, LLP, New York, NY, for Plaintiffs.

James J. Foster, Esq., Wolf, Greenfield & Sacks, P.C., Boston, MA, John T. Johnson, Esq., David Tadahiko Yaegashi, Esq., John Stephen Goetz, Esq., Kristen A. McCallion, Esq., Fish & Richardson P.C., New York, NY, for Defendant.

## OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge:

## I. INTRODUCTION

Luv n' Care, Ltd. and Admar International, Inc. (collectively, "LNC") bring this infringement action against Regent Baby Products Corp. d/b/a Baby King ("Regent"). LNC sells sippy cups and other products for children in the United States and internationally under the NUBY brand name, or through private labels including Precious Moments and Parent's Choice.[1] Admar International, Inc. owns the interest in LNC's trademarks and trade dress.[2] Regent is also a baby products company and sells its products under the Baby King brand name, or through private labels including Fisher Price and Sesame Beginnings.[3]

LNC alleges that Regent has infringed its no-spill drinking cup design patent and corresponding trade dress.[4] LNC also al-

---

**1.** *See* Regent Baby Products' Revised Statement of Undisputed Material Facts Pursuant to Local Civil Rules 56.1 ("Def. 56.1") ¶¶ 187–189.

**2.** *See* Second Amended Complaint ("SAC") ¶ 19.

**3.** *See* Def. 56.1 ¶¶ 2 and 6.

**4.** LNC originally alleged infringement of fourteen different products, including various no-spill drinking cups, pacifiers, pacifier holders, teething keys, and a food storage container. LNC voluntarily withdrew its claims as to nine of those products on October 23, 2013. *See* 10/23/13 Stipulation of Partial Dismissal With Prejudice and 10/23/13 Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion For Summary Judgment ("PL Opp."), at 1, n. 1. LNC now brings infringement claims as to five products—1) the "Gripper Cup" silicone spout cap and cup combination,

leges unfair competition and tortious interference with prospective business relations under New York state law. Regent now moves for partial summary judgment on LNC's trade dress infringement and tortious interference claims. For the reasons set forth below, Regent's motion for partial summary judgment is granted.

## II. BACKGROUND

Regent's motion for summary judgment on trade dress infringement is limited to LNC's claims as to the flip-top cap and the hard spout cup and cap combination.[5] "LNC has been selling its hard top design for approximately fifteen years, and its flip-top design for ... over fourteen years."[6] Since that time, "LNC has sold more than $21 million of its flip-top products ... in the United States, and more than $58 million of its hard top products in the United States."[7] LNC claims that numerous products manufactured by Regent and sold under both its brand name and private labels infringe upon its protected trade dress.[8]

LNC also alleges that Regent's sale of allegedly infringing no-spill cups has tortiously interfered with its prospective business relations.[9] Primarily, LNC claims that Regent has "acted to induce [LNC's]

customers including, but not limited to, Dollar General Corporation, to purchase the [infringing] no-spill cups ... instead of [LNC's] authorized, legitimate no-spill cups ... with the sole purpose of harming [LNC]" or by using "dishonest, unfair or improper means to cause harm and injury to [LNC]."[10]

## III. LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law.'"[11] "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[12]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle him to judgment as a matter of law."[13] "When the burden of proof at trial would fall on the non-moving party, it ordi-

---

2) the "Gripper Cup" silicone spout cap alone, 3) the "Flip-It" flip-top cap, 4) the "Hard Spout" cap and cup combination, and 5) the "Grip n'Sip" cap and twin-handle cup combination. *See* SAC ¶¶ 49–77 and Pl. Opp. at 1.

**5.** *See* 10/29/13 Regent Baby Products' Revised Memorandum of Law in Support of Its Motion for Partial Summary Judgment ("Def. Mem."), at 2.

**6.** 10/23/13 Declaration of Nouri E. Hakim, Chief Executive Officer of LNC, ¶ 10.

**7.** *Id.* ¶ 12.

**8.** *See* SAC ¶¶ 62–72.

**9.** *See id.* ¶¶ 149–156.

**10.** *Id.* ¶¶ 152–153.

**11.** *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 692 (2d Cir.2012) (quoting Fed.R.Civ.P. 56(c)) (other quotations omitted).

**12.** *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir.2012), *aff'd*, — U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013) (quotations and alterations omitted).

**13.** *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir.2012) (citations omitted).

narily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim."[14] The burden then "shifts to the non[-]moving party to present specific evidence showing a genuine dispute."[15] This requires "'more than simply show[ing] that there is some metaphysical doubt as to the material facts,'"[16] and the non-moving party cannot "rely on conclusory allegations or unsubstantiated speculation."[17]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[18] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[19]

## IV. APPLICABLE LAW

### A. Trade Dress Infringement Under the Lanham Act

The Lanham Act provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ...

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[20]

 A plaintiff asserting a trademark infringement claim must show *first* that its trade dress or trademark is a protectable interest under the Lanham Act, and *second* that there is a likelihood of confusion.[21] If a plaintiff offers no evidence of a protectable interest, a court need not consider likelihood of confusion.[22] Moreover, a Lanham Act claimant must describe its protectable interest with some clarity—it must offer "'a precise expression of the

---

**14.** *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.2008).

**15.** *Id.*

**16.** *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir.2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

**17.** *Id.*

**18.** *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir.2012).

**19.** *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir.2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

**20.** 15 U.S.C. § 1125(a).

**21.** *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir.2006).

**22.** *See Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir.1985) ("If, however, secondary meaning cannot be established, [the product claiming protection] will be ineligible for protection, and our analysis will conclude without having to address the likelihood of confusion. Absent secondary meaning, purchasers will not associate [the product] with a particular source of origin. By definition, there could not be likelihood of confusion as to source.").

character and scope of the claimed trade dress.' "[23]

■ In order to succeed on a claim of trade dress infringement under Section 43(a) of the Lanham Act, a plaintiff must demonstrate: (1) that its claimed mark is either inherently distinctive or has acquired distinctiveness through secondary meaning; (2) that there is a likelihood of confusion between its trade dress and the defendant's; and (3) that the trade dress is non-functional.[24] Inherent distinctiveness is evaluated as follows:

> [T]rade dress is classified on a spectrum of increasing distinctiveness as generic, descriptive, suggestive, or arbitrary/fanciful. Suggestive and arbitrary or fanciful trade dress are deemed inherently distinctive and thus always satisfy the first prong of the test for protection. A descriptive trade dress may be found inherently distinctive if the plaintiff establishes that its mark has acquired secondary meaning giving it distinctiveness to the consumer. A generic trade dress receives no Lanham Act protection.[25]

■ To determine whether a trade dress has acquired distinctiveness through secondary meaning, a court should consider six factors: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." [26] "[A]n idea, a concept or a generalized type of appearance" is "generic" and not protected, even if the proponent can prove secondary meaning.[27] "[T]rade dress ... composed entirely of commonly used or functional elements ... should be regarded as unprotectible or 'generic,' to avoid tying up a product or marketing idea." [28]

■ The likelihood of confusion inquiry "turns on whether 'numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark.' " [29] "[A] probability of confusion, not a mere possibility, must be found to exist" in order to support a finding of infringement.[30] Generally speaking, establishing that probability is the plaintiff's burden,[31] which means that the defendant typically does not need to disprove a likelihood of confusion.[32] In determining

---

**23.** *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117 (2d Cir.2001) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir.1997)).

**24.** See *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769–70, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir.1997).

**25.** *Fun–Damental Too*, 111 F.3d at 999–1000 (citing *Two Pesos*, 505 U.S. at 769–70, 112 S.Ct. 2753 and *LeSportsac, Inc. v. K mart Corp.*, 754 F.2d 71, 76 (2d Cir.1985)).

**26.** *Cartier Inc. v. Sardell Jewelry, Inc.*, 294 Fed.Appx. 615, 617 (2d Cir.2008).

**27.** *Jeffrey Milstein Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir.1995).

**28.** *Yurman*, 262 F.3d at 118 (quoting *Milstein*, 58 F.3d at 32).

**29.** *Playtex Prods., Inc. v. Georgia–Pacific Corp.*, 390 F.3d 158, 161 (2d Cir.2004) (quoting *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 477–78 (2d Cir.1996)).

**30.** *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir.1993).

**31.** See *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986).

**32.** See *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004).

whether there is a likelihood of confusion, an eight-factor balancing test should be applied.[33] A finding of confusion need not be based on survey evidence; confusion may be shown through statements.

### B. Tortious Interference Under New York State Law

 A tortious interference claim requires a plaintiff to prove that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."[34]

## V. DISCUSSION

### A. Trade Dress Infringement

 Regent does not argue that LNC has failed to raise sufficient issues of material fact as to secondary meaning or likelihood of confusion. Rather, Regent argues that LNC's claimed trade dress is unprotected under the Lanham Act because it is generic. According to Regent, "cups just like LNC's have been sold for decades by other baby products companies" and its claims to trade dress rights "cannot be taken seriously" in light of the many other similar products available on the market.[35]

Regent argues that even if LNC were to raise sufficient issues of material fact as to secondary meaning or likelihood of confusion, summary judgment is required in Regent's favor because under Second Circuit law, " 'a showing of secondary meaning is insufficient to protect product designs that are overbroad or generic.' "[36]

LNC responds that it does not claim "trade dress rights to the general concept of a hard top cup or a flip-top cup" but rather "it claims rights to specific designs of hard top and flip-top cups as described in [the] Second Amended Complaint."[37] LNC further restates that it has raised sufficient issues of material fact as to secondary meaning and likelihood of confusion to defeat summary judgment.[38]

 LNC describes the protected trade dress of its hard spout cup as follows: "a custom-colored translucent, generally cylindrical shaped cup having a slightly wider upper portion" with a "colored or tinted inner dome cap portion sit[ting] on an outer ring cap portion ... on the body of the cup; the inner dome cap portion having a spout with a bulb-like base and a relatively pointed top."[39] Regent provides exhaustive evidence of numerous hard spout cups that have been widely available on the market for over two decades, through submission of third

---

**33.** *See Starbucks Corp. v. Borough Coffee, Inc.,* 588 F.3d 97, 115 (2d Cir.2009) (citing *Polaroid Corp. v. Polarad Elec. Corp.,* 287 F.2d 492, 495 (2d Cir.1961)). The *Polaroid* factors include: (1) strength of the plaintiff's mark; (2) degree of similarity between plaintiff's and defendant's marks; (3) the competitive proximity of the products; (4) the likelihood that either owner will bridge the gap; (5) the sophistication of the buyers; (6) the quality of defendant's product; (7) actual confusion; and (8) the existence of bad faith. *See id.* None of these factors is dispositive, and the above list is not exhaustive. *See Streetwise Maps, Inc. v. VanDam, Inc.,* 159 F.3d 739, 743 (2d Cir.1998). Instead, they are intended to act "as a useful guide" in determining if

there exists a likelihood of confusion. *Lois Sportswear,* 799 F.2d at 872.

**34.** *Catskill Dev., LLC v. Park Place Entm't,* 547 F.3d 115, 132 (2d Cir.2008).

**35.** Def. Mem. at 8.

**36.** *Id.* at 10 (quoting *Yurman,* 262 F.3d at 117).

**37.** Pl. Opp. at 4.

**38.** *See id.* at 3–11.

**39.** SAC ¶¶ 71–72

party catalogs and websites of online retailers.[40] Some of the hard spout cups matching LNC's trade dress description were sold by other manufacturers as early as 1993 and 1994—several years before LNC's first hard-spout cup became available for sale in 1998.[41]

LNC describes the protected trade dress of its flip-top cap as follows: "the combination and arrangement of a flip-top 'football·helmet' shaped cap, and a ring shaped base, when the cap is considered individually and when attached to a cup."[42] Regent submits numerous examples of other flip-top cups that include a "football helmet-shaped" cap with a "ring shaped base."[43] Regent argues that these designs are "common, non-distinctive, unquestionably conform[] to industry standards, and [are] thus generic and unprotectable."[44]

"It is axiomatic that generic product designs are not entitled to trade dress protection under the Lanham Act."[45] "A trade dress that consists of the shape of a product that conforms to a well-established industry custom is generic and hence unprotected."[46] "The level of generality at which a trade dress is described, as well as the fact that a similar trade dress is already being used by manufacturers of other kinds of products, may indicate that that dress is no more than a concept or idea to be applied to particular products."[47] "[W]here it is the custom in a particular industry to package products in a similar manner, a trade dress done in that style is likely to be generic."[48]

---

**40.** *See* 9/16/13 Declaration of Roy Pomerantz, Chief Executive Officer and General Counsel of Regent Baby Products ("9/16/13 Pomerantz Decl."), ¶¶ 110–121; 11/8/13 Declaration of Pomerantz ("11/18/13 Pomerantz Decl."), ¶ 2. *See also* Def. 56.1 ¶¶ 168–185. LNC objects to the admission of this evidence on the ground that Regent provided no authentication for the cited catalogs and websites and that the images are "inadmissible hearsay." Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, ¶¶ 168–185. The "appearance, contents, substance, internal patterns, or other distinctive characteristics" of Regent's proffered third party catalogs and webpages are sufficient to authenticate them. Federal Rule of Evidence ("Rule") 901(b)(4). The catalogs and web pages show hard spout cups matching LNC's trade dress description listed for sale by third party manufacturers and retailers. This evidence is not hearsay because it is not offered for the truth of any assertion contained therein. Rather, the catalogs and web pages are offered to show that these cups have been, and continue to be, commonly sold and available. *See Giggle, Inc. v. netFocal, Inc.*, 856 F.Supp.2d 625, 633 (S.D.N.Y.2012) ("[E]vidence of the advertisements and websites, *which are themselves not hearsay*, ... shows that ... third parties have been actively using the GIGGLE mark in commerce to sell children's toys, market children's goods and services to the consuming public, and operate businesses in the children's goods and services industry.") (emphasis added). Because Regent's evidence has been properly authenticated and is not hearsay, it is admissible and properly considered on this summary judgment motion.

**41.** *See* 9/16/13 Pomerantz Decl. ¶¶ 114–115.

**42.** SAC ¶ 66.

**43.** *See* 9/16/13 Pomerantz Decl. ¶¶ 133–135 and 11/18/13 Pomerantz Decl. ¶ 4. *See also* Def. 56.1 ¶¶ 193–203. LNC's objections as to authentication and hearsay regarding this evidence are the same as those addressed above.

**44.** 11/8/13 Defendant Regent Baby's Reply Memorandum of Law in Support of Its Motion for Partial Summary Judgment ("Def. Rep."), at 13.

**45.** *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F.Supp.2d 355, 363 (S.D.N.Y.2003).

**46.** *Fun–Damental Too*, 111 F.3d at 1000.

**47.** *Milstein*, 58 F.3d at 33.

**48.** *Mana Prods. v. Columbia Cosmetics Mfg.*, 65 F.3d 1063, 1069–71 (2d Cir.1995).

Courts in the Second Circuit have thus held that a black rectangular-shaped compact design is generic, because these qualities are "common characteristics of the entire genre of makeup compacts," [49] that the "Swedish Fish" candy design is generic because "animal-shaped gummy candy is common in the candy industry," [50] and that the "use of gold stars, blue sky and clouds in the labeling and advertising" of a doll is generic because it is "merely suggestive of the broader idea of [an] angelic . . . character." [51] Other federal circuit courts have adopted the Second Circuit's precedent on generic trade dress.[52]

There is no genuine issue of material fact as to whether these designs are generic. LNC's trade dress descriptions refer to common shapes frequently used in the sippy cup industry—a "generally cylindrical cup with a slightly wider upper portion" and a cap with a "bulb-like base and a slightly pointed top" or a "football-helmet shaped cap" with a "ring shaped base"—that even when configured together would simply be too broad and too general to warrant trade dress protection. Much like the Swedish Fish design is common among candy manufacturers and a black compact is common in the cosmetics industry, these general shapes and configurations are ubiquitous in the sippy cup

market and do not warrant Lanham Act protection. "[G]ranting trade dress protection to an ordinary product design would create a monopoly in the goods themselves." [53]

LNC does not substantively contest Regent's evidence that the design is common in the market. Rather, LNC argues that the design was intended to "provid[e] the consumer with a unique and distinctive look" and that "it is these unique designs that consumers have grown and learned to associate with LNC." [54] These assertions do not raise a genuine issue of material fact as to whether or not the product configurations are generic and commonplace. LNC's argument that its hard spout and flip-top designs have developed a secondary meaning is irrelevant for generic trade dress. Second Circuit law is clear that "even a showing of secondary meaning is insufficient to protect product designs that are overbroad or generic" [55] and that "[g]eneric trade dress is never entitled to protection." [56]

Because LNC has failed to define a protectable interest under the Lanham Act, I need not consider likelihood of confusion or the functionality of the trade dresses' features.[57] Accordingly, LNC's Lanham Act claims as to its hard spout cup and

---

49. *Id.* at 1070.

50. *Malaco Leaf,* 287 F.Supp.2d at 364.

51. *Kaufman & Fisher Wish Co. Ltd. v. FAO Schwarz,* 184 F.Supp.2d 311, 322 (S.D.N.Y. 2001).

52. *See, e.g., Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619, 638 (6th Cir.2002) (finding generic product configurations unprotectable despite secondary meaning evidence because "no designer should have a monopoly on designs regarded by the public as the basic form of a particular item"); *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.,* 205 F.3d 137, 142 (4th Cir.2000)

("Trade dress should be considered generic if well-known or common . . . or a common basic shape or design").

53. *Landscape Forms,* 113 F.3d at 380.

54. Pl. Opp. at 4–5.

55. *Yurman,* 262 F.3d at 118.

56. *Kaufman,* 184 F.Supp.2d at 321 (citing *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 743 (2d Cir.1998)).

57. *Medisim Ltd. v. BestMed LLC,* 910 F.Supp.2d 591, 615 (S.D.N.Y.2012).

flip-top cap product configurations are dismissed.

### B. Tortious Interference

■ Regent does not deny that it sold its products to Dollar General. However, Regent argues that the mere sale of these products is insufficient to prove that it intentionally interfered with LNC's business relationship.[58] Regent also argues that LNC has failed to present evidence of injury, which is one of the required elements of the tortious interference tort. According to Regent, "the only relationship allegedly injured was with Dollar General, which remains a current LNC customer."[59] LNC responds that even though Dollar General "remains a customer of LNC to a certain degree, [Regent's] sales have interfered with LNC's ability to sell as many of its original products ... as it otherwise could have."[60]

"Under New York law, the [intentional interference element] has been interpreted as requiring direct interference with a third party, that is, 'the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiffs.'"[61] LNC has failed to provide evidence that Regent targeted Dollar General specifically as an LNC customer and directed any activity towards Dollar General to specifically convince Dollar General to end or limit its relationship with LNC.[62] Regent merely sold its products to a retailer. Even if some of those products are ultimately found to have infringed upon LNC's patents or trade dress, the mere sale of those products without the intention to interfere with LNC's business relationship is not a tort.

Furthermore, LNC fails to provide evidence as to injury. The mere assertion that LNC has potentially lost out on sales, unsupported by facts, is conclusory and insufficient to defeat a motion for summary judgment.[63] Accordingly, LNC's claim based for tortious interference with prospective business relations is dismissed.

### VI. CONCLUSION

For the foregoing reasons, Regent's motion for partial summary judgment is granted. The Clerk of the Court is directed to close this motion (Docket No. 89). A conference is scheduled for January 6, 2014, at 4:30 p.m. in Courtroom 15C.

SO ORDERED.

### *MEMORANDUM OPINION AND ORDER*

On December 11, 2013, I granted defendant's motion for partial summary judg-

---

**58.** *See* Def. Rep. at 13–14 ("Regent's mere sale of its own products—the only action LNC takes issue with—and nothing more, does not constitute intentional interference.").

**59.** Def. Mem. at 11. *Accord* Def. 56.1 ¶ 209.

**60.** Pl. Opp. at 15. LNC also asserts for the first time in its opposition that Regent sold allegedly infringing products to Wal–Mart. However, Regent states that it "never sold the remaining items in this case to Wal–Mart." 11/8/13 Pomerantz Decl. ¶ 5.

**61.** *Bekhor v. Josephthal Grp., Inc.* No. 96 Civ. 4156, 2000 WL 1521198, at *8 (S.D.N.Y. Oct. 13, 2000) (quoting *Black Radio Network, Inc.* *v. NYNEX Corp.*, No. 96 Civ. 4138, 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000)).

**62.** Regent notes that LNC has never pled nor argued that Regent was aware of LNC's relationship with Dollar General. *See* Def. Rep. at 13, n. 61.

**63.** *See BellSouth Telecomm., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996) ("The party opposing the motion for summary judgment must set forth concrete particulars. It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts.") (quotations and other marks omitted).

ment on plaintiffs' federal trade dress infringement claims as to its flip-top cap and hard spout cup and cap combination and plaintiffs' state law claim for tortious interference with prospective business relations. On December 26, 2013, plaintiffs filed a motion seeking reconsideration of my ruling on the federal trade dress infringement claims. For the following reasons, plaintiffs' motion for reconsideration is denied.

■ *First,* plaintiffs' motion is untimely. Plaintiffs have brought this motion under Federal Rule of Civil Procedure 60(b)[1] and defendant has treated it as such.[2] However, Rule 60(b) permits relief "from a *final* judgment, order, or proceeding" (emphasis added). The December 11, 2013 Opinion and Order granted defendant's motion for *partial* summary judgment. Because that decision did not fully adjudicate the parties' claims, it was not appealable and thus not final for the purposes of Rule 60(b).[3] Therefore, plaintiffs' motion for reconsideration cannot be brought under Rule 60(b). Rather, plaintiffs must proceed under Local Rule 6.3 which requires litigants to bring motions for reconsideration within fourteen days of the initial determination, unless otherwise provided by the Court. The instant motion is denied as untimely because plain-

tiffs filed the motion for reconsideration fifteen days after my initial order and did not seek an extension of the deadline from the Court.

■ *Second,* even if plaintiffs' motion was considered on its merits, plaintiffs have presented no evidence or argument justifying reconsideration of the December 11, 2013 Opinion and Order. The standard for granting a motion for reconsideration pursuant to Local Rule 6.3 is strict in order to "to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."[4] "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."[5] Typical grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."[6]

■ Plaintiffs assert that the December 11, 2013 Opinion and Order did not adequately consider the "total image embodying [Luv n' Care's] trade dress" or the "physical products" of either plaintiff

---

1. *See* 12/26/13 Plaintiffs' Memorandum of Law in Support of Motion for Reconsideration of the Court's Opinion and Order Granting Defendant's Motion for Partial Summary Judgment ("Pl. Mem."), at 1.

2. *See* 1/10/14 Defendant's Memorandum of Law in Opposition to Plaintiffs' Rule 60(b) Motion, at 2–5.

3. *See* 12 James Wm. Moore et al., Moore's Federal Practice, § 60.23 (2011) ("The standard test for whether a judgment is 'final' for Rule 60(b) purposes is usually stated to be whether the judgment is sufficiently 'final' to be appealed."); *United States v. 228 Acres of Land & Dwelling*, 916 F.2d 808, 811 (2d Cir.

1990) ("An order that denies summary judgment or grants partial summary judgment cannot by itself be the basis for an appeal, since it is nonfinal.").

4. *AEP–PRI Inc. v. Galtronics Corp. Ltd.*, No. 12 Civ. 8981, 2013 WL 5289740, at *1 (S.D.N.Y. Sept. 19, 2013) (quoting *Naiman v. N.Y. Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005)).

5. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995).

6. *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (quotation omitted).

or its competitors.[7] I appropriately considered the disputed trade dress's total image in concluding that it is generic, including plaintiffs' own description of the trade dress, as well as physical examples and over fifty different catalog images, full color photographs and other exhibits submitted by Regent as part of its motion for partial summary judgment. Plaintiffs now want the Court to consider additional physical products, but it was free to submit these at any point during the extensive briefing on Regent's motion and cannot do so now for the first time on reconsideration. Plaintiffs also argue for the first time that Regent failed to show that the "trade dress became generic before Regent entered the market."[8] Again, plaintiffs may not use a motion for reconsideration to raise new arguments for the first time when they were free to raise them during the original briefing.[9]

For the above reasons, plaintiffs' motion for reconsideration is denied. The Clerk of the Court is directed to close plaintiffs' motion [Dkt. No. 115].

SO ORDERED.

---

7. Pl. Mem. at 1.

8. *Id.* at 2–3.

9. Plaintiffs' remaining arguments are frivolous. Plaintiffs argue that Regent "conceded" a material issue of fact by stating that its own products are different from LNC's. However, a statement about Regent's products does not raise a material issue of fact as to whether *LNC*'s products are generic. Plaintiffs also claim that their state law unfair competition claims can proceed on generic trade dress. While this may be true, the December 11, 2013 Opinion and Order only addressed the federal Lanham Act claim raised by defendant on its motion for partial summary judgment.