25-140-cv
*Univ. at Buffalo Young Americans for Freedom v. Univ. at Buffalo Student Ass'n. Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of November, two thousand twenty-five.

Present:

      BARRINGTON D. PARKER,
      SUSAN L. CARNEY,
      WILLIAM J. NARDINI,
          *Circuit Judges*.

---

UNIVERSITY AT BUFFALO YOUNG AMERICANS FOR FREEDOM, JUSTIN HILL, AMELIA SLUSARZ,

        *Plaintiffs-Appellants*,

      v.

UNIVERSITY AT BUFFALO STUDENT ASSOCIATION INC., BRIAN HAMLUK, in his official capacity as the UB Vice President for Student Life, PHYLLIS FLORO, in her official capacity as the UB Director of Student Engagement, TOMÁS AGUIRRE, in his official capacity as the University at Buffalo Dean of Students,

        *Defendants-Appellees*. *

25-140-cv

---

    ∗   The Clerk of Court is respectfully directed to amend the caption as set forth above.

1

For Plaintiffs-Appellants:   CHRISTOPHER P. SCHANDEVEL (Cody S. Barnett, Tyson C. Langhofer, P. Logan Spena, *on the brief*), Alliance Defending Freedom, Lansdowne, VA; John J. Bursch, Alliance Defending Freedom, Washington, DC; Travis C. Barham, Alliance Defending Freedom, Lawrenceville, GA.

For Defendant-Appellee University at Buffalo Student Association, Inc.:   AARON M. SAYKIN, Hodgson Russ LLP, Buffalo, NY; William G. Fassuliotis, Hodgson Russ LLP, New York, NY.

For Defendants-Appellees Brian Hamluk, Tomás Aguirre, And Phyllis Floro:   SARAH L. ROSENBLUTH (Barbara D. Underwood and Andrea Oser, *on the brief*), Assistant Solicitor General, *for* Letitia James, Attorney General State of New York, Buffalo, New York.

Appeal from a judgment of the United States District Court for the Western District of New York (Lawrence J. Vilardo, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants University at Buffalo Young Americans for Freedom ("YAF") and two of its officers appeal from a judgment of the United States District Court for the Western District of New York (Lawrence J. Vilardo, *District Judge*), granting Defendants-Appellees' motions to dismiss and denying plaintiffs' motion for a preliminary injunction.[1]

The complaint alleged the following: YAF is a chapter of the national non-profit organization, Young America's Foundation, at the University of New York at Buffalo. In March 2023, YAF hosted a speaker whose appearance prompted controversy on campus. Two weeks

---

[1] The district court never entered judgment in a separate document as required by Federal Rule of Civil Procedure 58. Under Fed. R. Civ. P. 58(c)(2)(B), however, the judgment became final 150 days after the district court's order was entered on the docket on December 15, 2024. Moreover, under Federal Rule of Appellate Procedure 4(a)(7)(B), we have jurisdiction over plaintiffs' appeal because "[a] failure to set forth a judgment or order on a separate document when required by [Rule] 58(a) does not affect the validity of an appeal from that judgment or order" in a civil case.

after the event, the University's Student Association adopted the "National Affiliation Ban," which would derecognize clubs that remained "a chapter of or otherwise part of any outside organization." The Student Association gave clubs until May 31, 2023, to comply with the National Affiliation Ban. Plaintiffs contend that on June 1, 2023, by operation of the National Affiliation Ban, YAF was "automatically derecognized." Appellants' Br. at 5. On that same day, June 1, plaintiffs filed this lawsuit against the Student Association and three University administrators ("University Administrators") alleging that the National Affiliation Ban violated their First Amendment rights. On July 3, 2023, the Student Association repealed the National Affiliation Ban and replaced it with the "Acknowledgment Provision," which requires club officers to certify their compliance with preexisting Student Association policies to access Student Association resources. One of those preexisting policies—the "Legal Status Ban"—prevents clubs from entering into contracts, commencing litigation, undertaking legal obligations, maintaining financial activities outside the Association, or operating as a separate legal entity outside of the Student Association. YAF refused to comply with the Acknowledgment Provision and lost access to Student Association funds. Plaintiffs subsequently amended their complaint to include allegations concerning the Legal Status Ban and the Acknowledgment Provision and moved to enjoin the Student Association and University Administrators from enforcing the Legal Status Ban.

Both groups of defendants moved to dismiss. The district court granted their motions and consequently denied plaintiffs' request for a preliminary injunction. The court concluded that plaintiffs lacked standing to bring claims for nominal damages over the since-repealed National Affiliation Ban. Further, the court held that plaintiffs failed to state a claim with respect to the Legal Status Ban and the Acknowledgment Provision, and further that they lacked standing to

3

challenge other Student Association policies governing clubs recognized by the Association. Plaintiffs now appeal. We assume the parties' familiarity with the case.

We review *de novo* the district court's decision to dismiss a complaint for either lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or failure to state a claim under Rule 12(b)(6). *Fund Liquidation Holdings LLC v. Bank of Am. Corp.,* 991 F.3d 370, 379 (2d Cir. 2021).[2] "As part of that review, we accept as true all material factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 379–80. "We review for abuse of discretion a district court's decision to deny a motion for a preliminary injunction." *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.,* 426 F.3d 532, 537 (2d Cir. 2005).

## I. National Affiliation Ban

Plaintiffs contend that the district court erred in finding that they lacked standing to pursue nominal damages against the Student Association for its enforcement of the National Affiliation ban. **[BB 15–20]** To demonstrate standing, a plaintiff must show an injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Plaintiffs contend they suffered the injury of "[d]erecognition . . . in and of itself" between June 1 and July 3, 2023, when the National Affiliation Ban was allegedly in effect. Appellants' Br. at 18. But this status change, with nothing more, does not constitute an injury in fact. *See,*

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

*e.g.*, *Healy v. James*, 408 U.S. 169, 181 (1972) ("The primary impediment to free association flowing from nonrecognition [of a student group] is the denial of use of campus facilities for meetings and other appropriate purposes."). To show such an injury, plaintiffs must point to some "practical effect of nonrecognition." *Id.* In an effort to demonstrate such effects, plaintiffs allege that they suffered "other concrete harms" of nonrecognition. Appellants' Br. at 18. They contend that during YAF's period of alleged nonrecognition in the University's summer months, the club "could not reserve table space in the Student Union, could not reserve classroom space for its weekly meetings, and could not reserve meeting space for guest speakers." *Id.* at 5–6 (quoting Joint App'x at 153). Plaintiffs do not allege, however, that they tried to do any of that, much less that they were prevented from doing so. Nor do they allege that they were deterred from attempting to engage in these activities. While allegations that a plaintiff was chilled from exercising his First Amendment rights can establish an injury in fact, "a plaintiff must proffer some objective evidence to substantiate his claim that the challenged conduct has deterred him from engaging in protected activity." *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991). Plaintiffs thus fail to allege either that they were denied benefits associated with recognition or chilled from seeking these benefits in the first place. The district court, therefore, correctly held that plaintiffs had not pled an injury in fact, and, as a result, lack standing to bring a claim for nominal damages based on the National Affiliation Ban.

## II.    Legal Status Ban

Plaintiffs also argue that the district court erred by dismissing their claims concerning the Legal Status Ban for failure to state a claim. Plaintiffs contend that the Legal Status Ban violates both their right to free speech and their right to expressive association by, among other things, forcing plaintiffs to "associate with groups who have messages [p]laintiffs generally oppose," and

5

"compel[ing] [p]laintiffs to express those groups' messages." Appellants' Br. at 36–37, 34.

We use a forum-based approach to review speech restrictions on publicly owned property. *Tyler v. City of Kingston*, 74 F.4th 57, 61 (2d Cir. 2023). As all parties agreed before this Court, a university forum for student organizations is a "limited public forum." *Christian Legal Soc. Chapter of the U. of Cal., Hastings Coll. of L. v. Martinez*, 561 U.S. 661, 679 (2010). In limited public forums, restrictions on expression that fall outside "the limited category for which the forum has been opened" need only be "viewpoint neutral and reasonable." *Hotel Emps. & Rest. Emps. Union, Loc. 100 of N.Y., N.Y. & Vicinity v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 546 (2d Cir. 2002). In *Martinez,* the Supreme Court assessed free speech and expressive association claims brought by a student club challenging a law school's club recognition policy. 561 U.S. at 678–83. In rejecting the club's argument that its claims should be assessed separately, the court held that where free speech and expressive-association claims "merge" in a university student organization forum, courts should assess those claims together under the viewpoint neutrality test applicable to limited public forums. *Id.* at 680.

### A. Viewpoint Neutral and Reasonable

Viewpoint-based restrictions target "a specific premise, a perspective, a standpoint from which a variety of subjects may be discussed and considered." *Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 281 (2d Cir. 1997). Neither the text of the Legal Status Ban, nor the text of the Acknowledgment Provision through which it is enforced, makes any distinction based on viewpoint. The Legal Status Ban prevents all clubs—whatever their views—from entering into contracts, commencing litigation, undertaking legal obligations, or operating as independent legal entities. And the Acknowledgment Provision requires all club officers—whatever their views—to certify compliance with all pre-existing Student Association policies, including the Legal Status

6

Ban. Accordingly, considered on their own, the Legal Status Ban and Acknowledgment Provision are viewpoint neutral.

Plaintiffs counter that even if the Legal Status Ban is neutral on its face, it allows for viewpoint discrimination because it "vests the Student Association with unlimited discretion" over its speech. Restrictions that confer unbridled discretion may violate the First Amendment by allowing "officials to suppress viewpoints in surreptitious ways that are difficult to detect." *Amidon v. Student Ass'n of State Univ. of N.Y. at Albany*, 508 F.3d 94, 103 (2d Cir. 2007). Plaintiffs do not allege, however, that the Legal Status Ban or Acknowledgment Provision *themselves* confer any discretion. Instead, plaintiffs suggest that because the Legal Status Ban bars clubs from engaging in certain activities independently, clubs must seek approval from the Student Association before engaging in them, and the policies governing *these* decisions give the Association "unbridled discretion" over clubs' expressive activities. Appellants' Br. at 41–43. None of these policies, however, alters the status of the Legal Status Ban itself as a viewpoint-neutral prohibition. Most problematically for their appeal, plaintiffs do not adequately identify which of these other Student Association policies they challenge on appeal. At most, in their opening brief to this Court, plaintiffs make passing mention in a single sentence to one such policy, which requires the Student Association and its officers to approve all contracts involving Student Association clubs. Absent any meaningful argumentation about these other largely unspecified policies, we conclude that plaintiffs have failed to allege that the Legal Status Ban operates in conjunction with such policies to confer discretion that allows the Student Association to engage in viewpoint discrimination.

The district court also properly found that the Legal Status Ban is reasonable. "In a limited public forum, the reasonableness analysis turns on the particular purpose and characteristics of the

7

forum and the extent to which the restrictions on speech are reasonably related to maintaining the environment the government intended to create in that forum." *Tyler*, 74 F.4th at 63. The University created the Student Association forum to "encourage intellectual and social development" of Student Association club members by coordinating and communicating clubs' activities to the wider campus community. Joint App'x at 88. Defendants assert that the Legal Status Ban both limits the Student Association's legal liability and helps protect Student Association funds. By limiting clubs' independent activities, the Legal Status Ban prevents clubs from "agreeing to predatory contracts, [] holding events without insurance, or [depleting Association Funds] by virtue of club officer negligence." Student Ass'n Appellees' Br. at 48. The Legal Status Ban also helps the Student Association remain compliant with New York State regulations that require it to maintain oversight and accounting of activity funds, as well as ensure the funds are used only for the support of specific kinds of programs. 8 N.Y.C.R.R. § 302.14(c)(3)–(4). We agree that the Legal Status Ban is reasonably related to achieving these aims.

### B. Level of Scrutiny

Plaintiffs contend that the district court should have applied strict scrutiny to at least some of their First Amendment claims concerning the Legal Status Ban. First, they assert that their expressive association claims and free speech claims should have been assessed separately, on the theory that only their free speech claims are subject to the lesser scrutiny applicable in limited public forums. But plaintiffs fail to distinguish the situation in this case from that at issue in *Martinez*—where the Supreme Court assessed together a student group's free speech and expressive association challenges to a law school's policy requiring all student groups to accept as members all students regardless of their beliefs as a condition of receiving official recognition and

8

its accompanying benefits. *Martinez*, 561 U.S. at 671, 680. That analysis controls here. Second, plaintiffs argue that even if the district court was correct to assess their claims together, the court should have applied strict scrutiny to both because the Legal Status Ban restricts speech that falls within the specific category for which the University opened the Student Association forum. While speech restrictions in limited public forums are typically assessed under the viewpoint neutrality test, restrictions on speech "that fall[] within the designated category for which the forum has been opened" must "serve a compelling interest and be narrowly tailored to achieve that interest." *Hotel Emps.*, 311 F.3d at 545. In other words, "once [the government] allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre." *Tyler*, 74 F.4th at 61. Plaintiffs argue that the Legal Status Ban "necessarily restrict[s] speech for which the forum has been opened," by restricting YAF's right to "exist as [its] own legal entity" and "freely contract with speakers." Appellants' Br. at 36. Like the "all comers" policy challenged in *Martinez*, however, the Legal Status Ban, enforced via the Acknowledgment Provision, constitutes an "access barrier" to the Student Association speech forum. *Martinez*, 561 U.S. at 671, 679 (describing challenged university policy that conditioned club recognition on compliance with the university's nondiscrimination policy). It does not, therefore, regulate speech that falls "within the designated category for which the forum has been opened," but rather regulates what speech is permitted to enter that forum in the first place. We thus reject plaintiffs' assertion that the district court applied the wrong level of scrutiny to its claims.

In sum, the district court properly concluded that the Legal Status Ban is both viewpoint neutral and reasonable and thus correctly dismissed plaintiffs' claims concerning the policy. It

9

therefore also correctly dismissed plaintiffs' request to enjoin defendants from enforcing the Ban.[3]

\* \* \*

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

---

[3] Plaintiffs also allege that the University Administrators' Recognition Policy—which requires student groups to abide by the rules of a "recognizing agent," such as the Student Association—gave the Association the "authority and discretion" to adopt and enforce the National Affiliation Ban and Legal Status Ban. Because plaintiffs' challenges to the National Affiliation Ban and Legal Status Ban fail, plaintiffs' claims concerning the Recognition Policy must also. The district court, therefore, correctly dismissed plaintiffs' claims against the Administrators.